CITY OF KNOXVILLE, et al. v. B. H. SPRANKLE, et al.

Eastern Section. January 7, 1928.

Petition for Certiorari denied by Supreme Court, April 14, 1928.

A. E. Mitchell, of Knoxville, for appellant.

C. E. Dawson and Frank Montgomery, of Knoxville, for appellee.

SNODGRASS, J.  The bill in this cause was filed by the city of Knoxville and Frank L. Sherrod against B. H. Sprankle and A. J. Burchfield, to enjoin the said Sprankle, who is the owner of what is called Tenth Addition to the city of Knoxville, and had laid out said addition over an alleged public road known as Sam Houston avenue, and without reference thereto, from further obstructing the said road, or from destroying or injuring it in any respect, and to open said road by decree of the court and remove the obstruction of a house built (it was alleged) on a part of said road by the defendant Burchfield. Title to said road was claimed to be in the public by an alleged dedication of the owners, as early as 1903, and also by prescription, and claimed to be under the direction and control of the city since 1917, when it was taken within its boundaries and jurisdiction.

Complainant Frank Sherrod claimed to have owned for some twenty-five years a valuable tract of land in the 26th Ward of the city, and that he had from year to year acquired additional property in said ward, and that a part of his property abutted or fronts on said Sam Houston avenue; that said avenue at the point where complainant's property fronts on it is sometimes referred to as Jonathan street, but that it is all a part of one highway and built at the same time by B. R. Strong and others; that this highway or Sam Houston avenue was built from the railroad, which parallels Island Home Pike, and about a city block and a half from said pike, and then runs in a southerly direction up the hill and, turning easterly, joins Davenport road.  The bill avers that this highway was built about 1901; that it was well graded and winds up the hill on a grade not exceeding five per cent at any one point; that this road was constructed by B. R. Strong and others at a cost of about $600, the construction being made up of cheap labor, and would represent a much greater expenditure if constructed now; that it was laid off and dedicated forty feet wide and on most excellent grade.

While it would appear from the two maps filed in the record (and this is true as a matter of fact) that access is not intended to be cut off, but rather enlarged by numerous and connecting streets, and that the changes of direction would not be important, still it is claimed that the old grade was laid out with especial view of its facility and is the best, notwithstanding any prospect of streets

being graded and macadamized which can be had there, and complainants seem to be unwilling to make any compromise.

It was denied that the public had acquired any rights thus enforceable either through dedication or prescription, and it was claimed that defendant owned the property over which said alleged highway formerly ran, through valid conveyances from the owners, without any reservations, and that the same would include said alleged highway. It was denied that said Sherrod or the public were entitled to the relief sought, or that defendants destroyed or rendered said highway impassable, for it was averred that no highway was there. It was insisted that said route claimed by complainants as a highway had not been so used for many years, if ever at all; that it had long since grown up in bushes, weeds, etc.; that the contour of the ground shows it must have been years and years since said road was used as a highway. While it was admitted that defendant Burchfield was erecting a house on property acquired from Sprankle, it was denied that it covered a portion of said alleged highway. It was alleged in the answer of respondents that it was the purpose of B. H. Sprankle to develop this acreage, which formerly consisted of hills, gulleys and washouts, into building lots; that it is his purpose to construct streets for the use of the public and the purchasers from B. H. Sprankle of the lots lying in this vicinity. It was denied that the streets proposed to be constructed were narrower than said alleged highway, or that they would in anywise cause complainant Sherrod or the public to be inconvenienced by their use. It was denied that said alleged highway was ever adopted by the county court, or that the same was ever opened by said court, or that the city of Knoxville has any interest in the outcome of this litigation. It was insisted that there was not, and had not been within the last decade, a highway across said property, and it was averred that said alleged roadway has not been used at all within the past ten or twelve years. It was insisted that complainants were not entitled to the relief sought by the bill.

Proof was taken and the cause heard before the Chancellor, who was of opinion that a right existed, both under a dedication and by prescription, in the complainants to the highway as claimed. He sustained the bill and required the removal of the obstruction, enjoined further obstruction and declared the highway described in the pleadings open for public use, and taxed defendants with the costs.

Defendants excepted to the decree, prayed, obtained and have perfected an appeal to this court, and make the following assignment of error:

"(1) The court erred in decreeing that the complainants were entitled to any relief.

"(2) The court erred in decreeing that the old Sam Houston road was dedicated to the public as a public road.

"(3) The court erred in decreeing that said road was accepted by the public and used continuously for more than twenty years.

"(4) The court erred in decreeing that Sam Houston avenue is a public road.

"(5) The court erred in decreeing that the defendants below had obstructed a public road."

We do not think under the facts of this case that any prescriptive right of way has been acquired either public or private in that portion of the road covered by the defendants' land. The road was laid out in 1903 and an effort made to have it accepted and the obligation of its upkeep taken over as a county charge, and while it appears that the petition of a number of citizens to this effect was presented to the county court, it does not appear that he county court ever accepted such obligation or recognized the public need of such a road. Complainant Sherrod attempts to make it so appear that it was accepted by saying that he obtained authority from the road officers to put in his time on that road, and that he did work it for ten years with men and teams, but no other men worked it, and we are satisfied that such desultory work as Mr. Sherrod employed was only for his own private benefit, and that it was only sufficient to enable him to get into the lands adjacent to cultivate them, and that after this he abandoned it.

It appears that with the exception of one or two lots that were sold by the owners of defendant's property, the scheme to sell lots was abandoned, and the land disposed of as acreage property. When Sprankle got it in 1922 the old roadbed or place where it had been originally graded by the lot schemers was but a trace, had almost become obliterated, and had become overgrown with weeds, bushes and saplings of several years' growth. The public, if it had ever used it to any very great extent, had ceased to do so, and continued to use the usual road that had been in existence and kept up doubtless by the county as formerly. Mr. Fox, a citizen of that community, who lived up on the hill and used the Davenport road, one day a year or so before his deposition was taken, when they were working the Davenport road, for this reason in returning home sought to go up that way, and drove up into a man's yard, and had to turn around and come back. He guessed it had been a year or two since he had been down there before that time, he did not know how long. This was his situation: Though the road ran up the hill probably some two and a half or three blocks away, he said

the occupants of his property used the Davenport road, which according to him was a few feet longer to town from his property than the way in question, though the grade he said on this old road would be better. Mr. Fox had done some work for the city in cleaning out the ditches from the Davenport road to the top of the hill.

In addition to this, after the defendant Sprankle bought the property, he had laid it off into lots, and designated same as Tenth Addition to the city of Knoxville. This addition at first was not acceptable to the city, but finally it had been put into condition of acceptability to the city and he had sold some lots, thus completing a dedication. The city had by contract with him laid a six-inch watermain running along Atchley street, and also a fire plug, and also a watermain running on Atchley and up Varnell street, and had also put water pipes on Sam Houston avenue. The Gas Company had put gas in three of the houses, though it appears that said addition had not been otherwise formally adopted by the city.

It appears that defendant Sprankle sold one or more lots to his co-defendant, who has built a house that encroaches somewhat on this old highway, and this house by the bill is sought to be removed.

Defendant Sprankle has spent several thousand dollars in grading the streets of his addition, according to the record has built five houses and sold a number of lots, and through the medium of these streets, which make changes in the course of this old highway or street, which was called Sam Houston avenue, the addition having been laid out without reference thereto, a reasonable way is still left open which we do not think very materially differs from the old, though it is claimed the grade will be somewhat increased and the turn at a street corner will be at right angles instead of in a curve. So we think while, and without reference to the question as to whether or not the county accepted this old road, there may have been a technical dedication in the acceptance by the public in its limited use in the beginning, when it was first graded, considered with reference to the intention that it should be a public road, that when it came under the control of the city in 1917, with the public use practically abandoned as it was, that the action of the city with reference to this addition would render the relief it now asks for inequitable; and that so far as the plaintiff Sherrod is concerned, if he has any equities by reason of any agreement between his father and the others concerned in the original opening of this old road, which was allowed to become impassable in places, and was neither kept up by him nor could be used without the expenditure of money, which we are satisfied under the circumstances would not have been contributed by him, he should be well content with the facilities that can and will be afforded him

for passage by reason of the streets that have been secured in the dedication of this new addition that has taken place. If the city should want or need this old road in the shape it was as a street exaction, let it take it in the way pointed out, when compensation can be had for the destruction and damage that may be wrought, but as a suitor in a court of equity it must accept the relief that court is willing to grant upon term of equitable conscience.

"Where an actual exercise of an easement for a right of way shows that the servient estate suffers unnecessarily great or irreparable injury, equity may, in a proper proceeding, make such changes in the manner of the exercise of the easement as will conserve his estate and protect the owner of the easement at the same time." C. J., Vol. 19, 398-399.

The working principle governing this case is discoverable, we think, from the case of Shelby v. State, 10 Hum., 164. Shelby owned land over which a road established by public authority ran, beginning on Cumberland river near the town of Nashville, and running thence north. The road was superseded by the White's Creek Turnpike, for all public purposes, and the portion of it which lay north of the turnpike was closed by an order of the county court. That portion of it which ran from the turnpike to the river was left open, but not used except by a few persons who resided in the immediate vicinity thereof, for watering stock and other like purposes. Shelby built a fence across the road with the view to enclose his property, and was indicted and convicted for obstructing a public road. On appeal the judgment was reversed, the court holding the proof showed that on the completion of the turnpike road, a period of at least three years previous to the trial of the case, the old river road, as it is called by some of the witnesses, or that part of it which lay between White's Creek Turnpike and the river (for the obstruction of which the indictment was brought) had ceased to be used by the public; the entire public travelling being on the White's Creek Turnpike road; that after the great freshet of 1847-8 part of said road became and still continues to be impassable; that said White's Creek Turnpike Road is entirely sufficient for all purposes, and said old road is of no utility to the public. The court said in that case that it might very well be admitted that the right of way or easement acquired by the public in the road had not been lost by nonuser; but on the contrary, that it might be resumed if deemed proper by the public, though on that point it was said they expressed no opinion, for the reason (we might add) that the latter question was not involved. And they added:

"But it is very clear that such easement may be abandoned or the use thereof discontinued by the public. And if the pub-

lic cease to use a road, and adopt another, and thereupon the owner of the soil over which the old road passed resumed the use and occupancy thereof, and the public acquiesced therein for the period of three years, the discontinuance, or abandonment of the old road may well be presumed, in the absence of all evidence indicating a contrary intention on the part of the public. In this case there is no evidence of any such intention; and if such existed the burden of proof was on the prosecutor. The use of the old road by a few individuals in the immediate vicinity thereof, for purposes of mere private convenience, furnishes no evidence sufficient to repel the presumption of abandonment by the public.''

With the exception of a few unimportant minor particulars that is this case. While as stated there is evidence of a dedication in 1903 by different landowners over which the road passed, and that the public in a limited capacity since used it for awhile, complainant only claims to have individually with his men and teams worked the same for a period of ten years, which would have brought it up to 1913, the county court had not accepted it either as an additional contribution to its public road system, nor as a substitute for the Davenport road or other means of communication; and when its original availability had determined by reason of all failure to keep it in repair throughout, whatever may have been done for the road south of the spring and leading out to the Davenport road by owners of the land along that section, we are satisfied that no work of any character has been done since complainant Sherrod quit working, and the freshets had reduced the road to gullies, and time continued the opportunity for saplings and weeds to grow on the surface or thread of this old road on defendant's section, until portions of it were impassable for the public to travel, and that this condition had existed for more than three years previous to the purchase of that portion of the land over which it passed by the defendant Sprankle in 1922. This furnishes a reason why the public had resumed the use of the Davenport or other roads that had been kept up, which is always essential to maintaining roads.

This situation, coupled with such acquiescence by the city, which at the time and since 1917 had control and direction of whatever rights the public had therein, as might be inferred from its actions with reference to the addition heretofore detailed, we think not only furnishes evidence of an abandonment by the public, but an intentional, ratifying assent thereto by the city, foreclosing any rights in gross existing in individuals. Complainant Sherrod, showing no dominant appurtenant easement in himself in defendant's particular estate, cannot complain.

While as might appear from the foregoing appellant's second assignment is overruled, all the others are sustained. It results that the decree of the Chancellor is reversed and the bill dismissed, at the cost of complainants and their sureties.

Portrum and Thompson, JJ., concur.