352

# CHARLES A. CARTWRIGHT et ux. v.
# HENRY D. BELL et ux. —418 S.W.(2d) 463.

Middle Section. March 31, 1967.

Certiorari Denied by Supreme Court August 21, 1967.

354

Tyler Berry, III, Franklin, for appellees.

C. D. Berry, Franklin, Henry D. Bell, Nashville, for appellants.

I

## THE CASE

SHRIVER, J. The complainants, Charles A. Cartwright, and wife, filed their bill in the Chancery Court at Franklin, Tennessee, against defendants, Henry D. Bell and wife, the primary contention in the original bill being that the defendants were trespassing on complainants "private drive" leading from a public road to their house and premises. The primary relief sought was an injunction to restrain defendants from trespassing on the land of complainants. They also prayed that any grant or devise which might be a cloud on complainants' title be removed.

The defendants in their answer allege that the road which complainants contend is a "private drive" is, in fact, a public road established by formal dedication by the owners, which instrument of dedication is recorded in the Register's Office for Williamson County and that defendants, as owners of land adjoining that of complainants and abutting said road, have the right, along with members of the public, to use said road and, therefore, were not guilty of trespassing.

The case was tried before the Honorable Wallace J. Smith, Chancellor, on depositions and documentary evi-

dence and resulted in a finding of facts and opinion favorable to the contentions of complainants. The final decree dated March 1, 1966, holds that the route in dispute was built by a private individual and was never used by the general public and that there was no showing of a dedication and acceptance by the County or the public as a County road, and, since the defendants have no prescriptive right in the road by virtue of adverse user, the said roadway is the private property of complainants. The temporary injunction previously granted was made permanent.

From this decree the defendants were granted and perfected their appeal to this Court and have assigned errors.

## II

## THE FACTS

It is averred and the record shows that the road in question extends across the property of complainants for a distance of about one mile and abuts the land owned by the defendants for a distance of about 1,990 feet.

As is alleged in the original bill and shown by the proof, the part of the road in question is a segment of a road that was proposed to be established by complainants' predecessor in title and nine other owners of property over which it would run.

In order to establish such a road these ten property owners contemporaneously executed identical instruments of dedication to Williamson County. The dedication instrument with reference to the segment of the road in dispute was executed and acknowledged by Mrs. N. J. Gardner, complainants' predecessor in title, on April 2, 1920, as follows:

"Mrs. N. J. Gardner, To. Deed. Williamson County. Williamson County, Tennessee, April 2, 1920. To the County Court of Williamson County, Tennessee, We, Mrs. J. N. Gardner, the undersigned, being the owner of a certain tract of land and being in the 7th Civil District of Williamson County, Tennessee, and bounded as follows: North by N. O. Lazenby, East by Jno. Hughes, south by Tom Horton, West by Bob Mckay, for the purpose of procuring a highway agree to and do hereby dedicate to Williamson County, one of the Counties of the State of Tennessee, its successors and assigns for public use as a right of way for highway purposes a strip of our said land thirty feet in width, and which lies between parallel line which run fifteen feet from and on each side of a center line to be surveyed across our said land by Mr. Jno Wilkes for the purpose of exactly locating said right of way and we hereby waive any and all claims for damages which may be sustained by us by reason of the opening and building the highway.

Mrs. N. J. Gardner

"State of Tennessee
Williamson County.

Personally appeared before me H. C. Jamison, a Notary Public in and for said County and State, the within named Mrs. N. J. Gardner, widow, the bargainor, with whom I am personally acquainted, and who acknowledged that she executed the within instrument for the purposes therein contained.

Witness my hand and official seal, at Franklin Tennessee, this the 2nd, day of April, 1920.

(SEAL)                    H. C. Jamison, Notary Public.

"Filed for record this the 24th day of April, A.D. 1920, at 11-32 o'clock, A.M.

              J. H. Whitfield, Dep. Register"

Thereafter on April 6, 1920, the Williamson County Quarterly Court passed the following resolution:

"Esq. Stockett offered the following resolution:

"Be it resolved by the County Court of Williamson County on April 6th, 1920, that the petition presented to said Court by Thos. McClannahan, et als asking permission to establish a county road extending from the Davidson County line of the Granny White Pike to Franklin be allowed and it is expressly understood and so ordered by this Court that by this action no obligation or liability of cost may be incurred by establishing this as a County Road shall be paid by this County.

"Esq. Stockett moved that the resolution be adopted, which motion prevailed."

Thereafter on April 24, 1920, the above quoted instrument of dedication and the instruments executed by the other nine landowners recorded in the Register's Office of Williamson County, Tennessee.

Sometime thereafter, in 1920 or 1921, the road was surveyed, following which the segment of the road across the Gardner property was built along the general route surveyed in its present location by the members of the Gardner family and the two families owning property south of the Gardner property.

Following the construction of the road in 1921, it was used until 1950 by the Gardner family, the Reed, Horton and Myer families and by their tenants and visitors, and

by the successive property owners, their tenants and visitors. Over the same period the road was also used by a number of other persons, who were members of the general public, some of whom lived several miles away.

Defendants' witnesses who used the road considered it to be a public road.

Complainants' witnesses who used the road did not consider it a public road because they knew that county hands did not maintain it. They considered North Berry's Chapel Road to be a public road because county hands did work it. This was the conclusion despite the fact that from 1920 to 1950 the road in question was in much better state of repair and was used as a substitute for North Berry's Chapel Road.

Gates were maintained on both North Berry's Chapel Road and on the road in question. However, there is no contention that North Berry's Chapel Road is not a public road. But after North Berry's Chapel Road was rebuilt by the county in 1950 there was no further general use of the road in question until 1956 when defendants began to use it.

The State Highway Department in 1939 found the road in question to be a public road (according to its criteria) and included it on the highway maps of Williamson County in 1939 and 1959.

*Complainants acquired their land in 1949 by deed which expressly conveyed same "subject to" the instrument of dedication for highway purposes executed and recorded by Mrs. N. J. Gardner in 1920.*

It is contended by complainants that there was no finding of fact by the Chancellor that this road was a segment of a road proposed by complainants' predecessor

in title and that there was not sufficient proof to support such a claim by the defendants. It is also contended that the proposed road, referred to in the title of Mrs. N. J. Gardner, was not along the route of the present road but ran in a North-South direction on the Gardner property, whereas, the present road adjacent to defendants land runs in an East-West direction in a different location, and that, although the road proposed by the deed of dedication of the Gardners along with the other nine land-owners, was surveyed, that it was never built and that the road in question was built by D. A. Gardner for the Gardner's private use.

A careful consideration of the proof in this case leads us to the conclusion that it does not support the above insistence of the complainant. For example, P. A. Reed, a witness for the defendant, was 52 years old when the deposition was taken, is a farmer and school bus driver who resides on North Berrys Chapel Road in the vicinity of the land of complainants and defendants. After testifying as to the map made "Exhibit I" to Mr. Cartwright's deposition, he was asked how long, to his knowledge, had the road in question been in existence. His testimony was as follows:

"Q. I mean from the westerly boundary of the Bell property to the intersection of the roadway, as shown on the map, with North Berrys Chapel Road?

A. It's been there ever since I can remember.

Q. It was in existence when you were living on your homeplace as a child, before you moved away?

A. Yes, sir.

Q. And, was it in existence when you returned to your homeplace as a child, before you moved away?

A. Yes, sir.

Q. And, was it in existence when you returned to your homeplace in the early forties?

A. Yes, sir.

Q. Mr. Reed, have you ever had occasion to use that roadway in its entirety?

A. Well, we used it to go to school on, back about forty years ago.''

He testified that the school referred to was Old Grassland on Hillsboro Road, and that he traveled from his home on North Berrys Chapel Road to the Grassland School; that they generally went by horse and buggy since he had two sisters attending the school at that time and that, in addition to that use, his family generally used this road to haul produce to the market.

When asked whether to his knowledge anyone other than he and members of his family used the road, he named a number of other families that used it.

At another point he testified that the public in general used the road, and, when asked how long such public use had been made of it, he stated: ''Ever since I can remember.'' At still another point he testified that the mail carrier used the road in question for a time.

On cross-examination when he was asked whether he intended to state that the deed from Mrs. Gardner constituted a right-of-way to the public across the Cartwright land, he replied: ''I ain't gonna say that, but I'll

say this, I'll say the public has always used it for forty years to my knowledge, going and coming."

He was questioned as to where the original road bed lay in relation to the South boundary line of Bell and he answered: "Well, where the road's at now is where it's been ever since I can remember, now."

On cross-examination he further testified:

"Q. What is your interest in seeing that a public road comes through here?

A. Let me tell you something, Tyler, I have travelled that road all my life and Ned Eggleston told me that it has been a public pass-way for over a 100 years and it could not be closed.

Q. As a matter of fact, Mr. Reed, this road has been closed for a number of years, hasn't it?

A. No, sir. There's old brush and wire and stuff out there, it's just because nobody wants to use it.

Q. When is the last time you've travelled the road?

A. Last year."

When asked what his interest was in seeing that a public road came down through this property, he answered:

"For one thing, Tyler, it's always been a public pass-way, according to my terms and I have never used it by permission or agreement and another thing there is 8 families in above there and in this valley, in the Myers place and the place I owen. There is a large hill on each side and that's the only way people could get out of there when there's a snow on the ground. County graders came out there and tried to grade these snows off just this past winter. Couldn't even get over

them hills and there's been talk of opening up a road down through there where we could get out. Now I drive a school bus, mind you, too. Been going over them 14 years."

At another point he stated he had talked to the County Road Superintendent and the commissioners on several occasions about it and stated:

"But if it hadn't been that I knew that Mr. Cartwright would agree for the County—really wanted them to take it over, I never would have done it."

Another witness, Foster Blakemore, 57 years old who formerly lived on Berrys Chapel Road in the vicinity of the road in question, was shown the map, Exhibit I to Mr. Cartwright's testimony, and asked if back in the 1920's when he was living on Berrys Chapel Road the road shown on the sketch ran through the Cartwright place. He testified that he had had occasion to travel the road through the Cartwright place; that he attended parties at the Beechville School and that he traveled the road in question through to Hillsboro Road and thence to the school. He usually traveled this road on horseback and described the route he followed from his home. When asked whether he traveled it rarely or frequently he stated:

"It was something like twice a week, maybe once a week, maybe I'd miss one Saturday night, and the next Saturday night I'd go back down in there for some reason, you know, supper, school to-do, you know, something like that."

When questioned as to whether he ever requested permission of anybody to travel the road he answered:

"No, sir. I never did."

He was asked why he ceased traveling it in 1933 and answered: "I married. That ended all of my girl going to see down in that part of the country."

On cross-examination he stated:

"Well, the ridge road came on out, everybody traveled it, the ridge road on out down and then down to Mr. Gardner's here. And I rode horses down through there and out that away. I also rode horses back out this away and over to the church, used to set away over here and the school house set down at the lower end."

Mrs. M. L. Myers, Sr., who formerly lived on property adjoining that of complainants, was asked and answered:

"Q. How did you and your family get out to the outer world?

A. We went through the Gardner place.

Q. Was that your only way out at that time, Mrs. Myers?

A. No. There was a road that went out over the hill.

Q. Start at your house and you would go which way?

A. Well, the road came down like this and down this way to the Gardner place and up the hill, almost as you come out from our place. The road went over a hill.

Q. And also you went down through the Gardner place?

A. Yes.

Q. Now, which way did you use most normally, or most usually, Mrs. Myers?

A. Well, we used that road most all the time, down through the Gardner place."

On further questioning she said her husband agreed to help work the road so that they could travel it.

Mr. James E. Wood, Jr., a Senior Engineer with the State Highway Planning Survey Division, testified at length and particularly as to the State Highway maps which show the road in question as a public road. He stated that the 1939 map, also a former map, were checked out with the proper county officials, and, when asked if he was saying that the road was in fact a public road, he answered:

"I am not saying that is a legally constituted public road, I am saying it is a road open to the public which was our intent to show."

At another point he was asked and answered:

"Q. And that, in the opinion of your field men, is a road open to the public?

A. The surface type makes no difference whatsoever, it could be a completely unimproved road or primitive road and open to the public."

At another point he was asked about the fact that there was a gate or gates on this road and whether or not that would indicate to the Highway Engineers that it was a private road. He replied that very often roads that are open to the public have gates put up by landowners with livestock. That they put gates across them not for the purpose of excluding the public but of fencing in their

stock and that the fact of the existence of gates was not necessarily indicative of a private road.

Again he testified:

"Q. Mr. Wood, would you make an affidavit to the effect that this encircled road on both of your exhibits is a road open to the public?

A. At the time we made that survey, I would say yes.

MR. BELL: We object to the form of that.

THE WITNESS: I am sure it was at the time we made the survey."

## III

## THE ASSIGNMENTS AND OUR CONCLUSIONS

■ *In assignment No. 1* it is asserted that the Chancellor erred in his conclusion that the form of dedication and acceptance in this case was controlled by the Private Act relating to Williamson County, Chapter 359, Private Acts of 1919. It is argued that this Private Act did not undertake to provide an exclusive method of dedication and acceptance and that the authority of the County Court to accept the dedication is conferred by Chapter 29, Public Acts of 1835-36 (T.C.A. 54-1701).

■ As was stated in Paschall v. Valentine, 45 Tenn. App. 131, 321 S.W.2d 568, a private act conferring authority upon the County to open, close, change or create a system of roads and bridges gives it no broader authority with respect to roads than is given under general statutes.

■ In Bashor v. Bowman, 133 Tenn. 269, 180 S.W. 326, the Court was dealing with a situation where the lands

of complainant were surrounded or enclosed by the lands of another person and pointed out that in such circumstances, where the abutting owner refuses to allow such person a passageway to and from his land, it shall be the duty of the County Court on petition to appoint a Jury of View to lay off and mark a road through the lands of such person.

The Court then says:

"All roads and ferries that have been laid out or appointed, agreeably to law, or that shall be so laid out and appointed, are to be deemed public roads and ferries."

And it held:

"That a highway declared to be public by statute is used chiefly by a private individual does not make it a private highway, where the whole public has the right to use it."

The Court goes on to say that where a highway declared by statute to be public is opened and maintained at private expense this does not detract from its public character.

And in Paschall v. Valentine, supra, the Court said that the abandonment of a county road and even the authorization to close it could not affect private rights of abutting landowners to easements of access.

*Assignment No. 2* charges error on the part of the Chancellor in concluding that because the road was neither built nor maintained at County expense as provided by the private act relating to Williamson County, no acceptance of the dedication.

In Nashville & Decatur Railroad v. The State, 60 Tenn. 55, it was held:

"When the right of the public has become fixed by dedication and use to a road, and it is, in fact, publicly used in that capacity, the failure of the County Court to perform the duties required of it, as to public roads, is not sufficient to defeat its character as such, and prevent the public from having the protection which the law gives to public roads."

*Assignment No. 3* avers that the Chancellor erred in finding as a fact that the ten landowners in the vicinity dedicated rights-of-way for the purpose of having the road built by the County. It is argued that there was no proof to support such a finding and that no such desire or purpose is expressed in the instruments of dedication and it is pointed out that after the County Court resolution was adopted permitting the establishment of the road without expense to the County, the instruments of dedication were recorded and the road built or opened by the dedicators and subsequently used by them and the public.

*Assignment No. 4* asserts that the Chancellor erred in concluding that the County Court resolution permitting the establishment of the road without cost to the County was in effect a rejection of the dedication and *Assignment No. 5* is to the effect that the Chancellor erred in his conclusion that there was no acceptance by public user.

These three assignments will be discussed together. In the leading case of Current, et al. v. Stevenson et al., 173 Tenn. 250, 116 S.W.2d 1026, the Court quoting with approval from 29 C.J., 392, said:

"The fact of the existence of a public highway may be proved or disproved by any competent evidence, either written or parol."

The opinion continues:

"In Elkins v. State, 21 Tenn. 543, 544, 2 Humph., 543, 544, it is said: 'In the absence of evidence to show the establishment of a highway by public authority, it is made out at common law by showing that the public have used and enjoyed it, and their actual occupation of it for a considerable space of time, without interruption, affords a strong presumption of a right to use it, and a much shorter period of possession will suffice to indicate a right in the public, than to show that a private person has a right to the estate of which he is possessed.'"

\* \* \* \* \* \*

"*Record evidence of the recognition by the public authorities of the way as a public highway or road is not necessary to complete the dedication, or to make the way a public way.*"

\* \* \* \* \* \*

"In the case of Nashville & D. R. R. v. State, [60 Tenn.] 1 Baxt. 55, it was said by Judge McFarland: 'When the right of the public to the road has become fixed by dedication and use, and it is in fact publicly used as a road, is the failure of the county court to perform the duties required of it as to public roads sufficient to defeat its character as such, and prevent the public from having the protection which the law gives to public roads? We think not. The county court may thus continue the road, and this would probably dispose

of the question; but the mere failure of the court to take action does not show that the road is not a public road, when the right of the public is fixed by dedication, and when it is publicly used.' "

\* \* \* \* \* \*

"The fact that the eastern part of said road has been abandoned, or that the road for some years had not been worked or kept up by the public officials, does not deprive complainants of the right to use this road.

The general rule is thus stated in 29 C.J. 547: 'An abutting owner has two distinct kinds of rights in a highway, a public right which he enjoys in common with all other citizens, and certain private rights which arise from his ownership of property contiguous to the highway, and which are not common to the public generally, and this regardless of whether the fee of the highway is in him or not. These rights are property of which he may not be deprived without his consent, except upon full compensation and by due process of law. They include the easement of access, and of light and air, the right to lateral support, and the right to have the highway kept upon as a thoroughfare to the whole community for the purpose of travel.' "

The opinion quotes from Anderson v. Turbeville, 46 Tenn. 150, to the effect that a municipal corporation has the power to abandon a public street and then asserts that, nevertheless, the owners of lots bordering on such public streets have an easement of way in the street in addition to the use of it in common with people generally and that this additional right is in the nature of private property within the protection of the law and cannot be taken without compensation.

370

■ The Court also quotes from Burkitt v. Battle, Tenn. Ch. App., 59 S.W. 429, to the effect that, where the right of the public in a road had become fixed by dedication when complainant bought adjoining land and the road remained upon and in use for several years thereafter, he acquired the right as a member of the public and as adjoining owner to require said road to remain open. The Court concludes as follows:

> "Counsel have referred us to no authority holding that where a party has acquired property adjoining a public highway or road which is subsequently abandoned by the county that such adjoining landowner loses the right to the use of the old road. Counsel for defendants have referred us to Section 2956 of the Code, which provides as follows:
>
> 'County courts are empowered to permit the erection of gates across public roads of the third and fourth class when, in their judgment, it will be manifestly to the advantage of the applicant, and not materially to the prejudice of the public.' "

*Assignment No. 5* is to the effect that the Chancellor erred in his conclusion that there was no acceptance by public user. It is asserted that this was error because the Chancellor found as a fact that the road in question was a segment of a road laid out and built by various landowners who permitted the inhabitants of the local neighborhood to use the road as a matter of favor and convenience. It is shown that the "local neighborhood" referred to consisted of a number of families who live along the route of the proposed road as set forth in the instruments of dedication to the County for the purpose of establishing such a road and we think a clear pre-

ponderance of the evidence is to the effect that these people used the road for many years at least up to and including the year 1950, with some use since that time.

On the whole, we are convinced that after this road was dedicated to the County by the landowners it was subsequently used by them and by members of the public to the extent that it became a public way and that there has been no such abandonment of it as to deprive the defendants of their right to use it.

It results that the assignments are sustained and the judgment of the Trial Court is reversed.

The costs will be equally divided between the complainants and the defendants.

Reversed.

Humphreys and Puryear, JJ., concur.