Jessie W. HARGIS, Plaintiff-Appellant,

v.

B. H. COLLIER, Oscar H. Collier and Braxton Collier, Defendants-Appellees.

Court of Appeals of Tennessee, Middle Section.

Dec. 1, 1978.

Certiorari Denied by Supreme Court April 2, 1979.

Claude Callicott, Nashville, for plaintiff-appellant.

Robert L. Johnson, Gainsboro, for defendants-appellees.

## OPINION

LEWIS, Judge.

Plaintiff, Mrs. Jessie W. Hargis, and defendants, B. H. Collier, Oscar Collier, and Braxton Collier, are adjacent landowners. A county road runs west along the southern boundary of defendants' property. It then turns north and runs most of the length between plaintiff's and defendants' land be-

fore turning northwest and then southwest to where it exits plaintiff's property. Many years ago the county connected the southernmost tips of this loop road and the loop fell into relatively infrequent use.

Plaintiff's predecessor in title eventually closed off the loop road with fencing. During 1954, plaintiff's husband, Jim Frank Hargis, now deceased, installed a gate in place of the fence at the southwest corner of defendants' property.

At that time Defendant B. H. Collier was told by Mr. Hargis that the gate was not being put up to keep defendants out, "just open it and go through it when you are ready."

After the gate was installed, defendants continued to use the road on occasion to repair fencing, for ingress and egress to certain portions of their property, and for other purposes associated with business aspects of the land.

The loop road remained in that status until shortly after the parties sold the northernmost portions of their properties for use in the "Cordell Hull" project. Horseback riders from that recreation area began using the loop road as an access to the "new" county road. To prevent that use, plaintiff locked the gate. It was at that time, September 1975, that defendants asserted their right to the use of the road.

It was plaintiff's contention, at trial, that she had acquired the public road by adverse possession; that defendants' property did not, in fact, abut the road; and that defendants had abandoned any right to the use of the road.

From the dismissal of her complaint by the Chancellor, the plaintiff has appealed.

■ Plaintiff first contends "the Chancellor erred in permitting counsel for the defendants to make findings of facts and conclusions of law and basic fundamental decisions beyond those made by the Court and announced by the Court at the end of the trial, and in signing and having entered the Judgment Order which was prepared by counsel for the defendants containing such additional findings, conclusions and deci-

sions. If additional findings, conclusions and decisions were needed, they should have been made by the Court and he should have ordered accordingly. If they were not needed, the Court should have signed the Order prepared by counsel for the plaintiff or should have prepared and signed an Order of substantially the same import."

Plaintiff says the Court's action was error because the finding of facts and the making of conclusions of law and basic decisions are judicial functions and cannot properly be performed by counsel for either of the parties.

With this statement, we are in agreement. However, that is not the situation in the instant case.

The Chancellor, at the conclusion of all the evidence and argument of counsel, made certain findings of fact and dismissed plaintiff's complaint.

Based upon the finding of facts and the dismissal, defendants' counsel, on December 2, 1977, mailed to plaintiff's counsel a copy of an order which he had prepared. The order was not satisfactory to plaintiff's counsel, who then prepared an order and forwarded it to defendants' counsel. Defendants' counsel was not satisfied with the order as prepared by plaintiff's counsel and called, advising him of that fact. On December 15, 1977, defendants' counsel informed plaintiff's counsel that he was forwarding the original order he had drawn to the Chancellor. On that same day, plaintiff's counsel mailed to the Chancellor the original order he had prepared. The Chancellor received both orders and signed the order prepared by defendants' counsel.

Both counsel submitted their versions to the Chancellor and each refused to concur in the other. The Chancellor made a conscious choice between the alternatives in selecting counsel for defendants' version as accurately reflecting the facts and findings.

If there was error in this instance, it was harmless error since there is ample evidence in the record to sustain the dismissal of the plaintiff's complaint. T.C.A. Sec. 27–116 and 117. *Wimberley v. Wimberley,* 50 Tenn.App. 242, 360 S.W.2d 779 (1960).

Plaintiff next contends that the Chancellor erred in admitting the following into evidence because Mr. B. H. Collier, defendant, was testifying as to a statement allegedly made by Mr. Jim Frank Hargis when Mr. Hargis erected the gate:

"Q. Now, what conversation did you and Jim Frank have, if you had any?

A. Well, he just said, 'I am not putting this gate up to cut you out at all, just open it and go through it when you get ready'. Because he had a lot fence in and everything to keep the cattle in."

The form of the objection by Mr. Fitzpatrick, plaintiff's counsel, is as follows:

MR. FITZPATRICK: Well, I except to what Jim Frank Hargis might have said. I except to that because he has no right to bind this woman. He is dead.

THE COURT: Well, he is the former owner. I believe I will let him testify.

MR. FITZPATRICK: He was the former owner, tenants by the entirety and he cannot do anything to jeopardize her interest.

THE COURT: Overrule the objection.

It is plaintiff's contention that the admission of Jim Frank Hargis's statement violated the hearsay rule.

As is said in 4 C.J.S. *Appeal & Error* § 248:

"An objection made in the trial court will not be treated in the appellate court as raising any question for review which is not within the scope of the objection as made, both as to the matter objected to and as to the grounds of the objection, so that the question may be fairly held to have been brought to the attention of the trial court".

This Court has stated:

[This assignment of error] is not well taken because the record shows that defendant's objection, at the time the evidence was introduced, was not sufficient, in that, it did not specify the grounds of the objection. In order to be available in the appellate courts, an objection to evidence in the court below must specify the grounds of the objection. The reason for this rule is that the opposition party may be given the opportunity to act advisedly, and not to be entrapped into error after it is too late to remedy the matter by introducing new evidence, which may be done if specific objection is made. *War Finance Corporation v. Ready,* 2 Tenn. App. 61, 69 (1925).

In any event, the Chancellor was correct in admitting the testimony.

As was stated in *Tom Love Grocery Co. v. Maryland Casualty Co.,* 166 Tenn. 275, 61 S.W.2d 672 (1933):

No rule is more familiar than that which requires the exclusion of unsworn statements or hearsay offered as evidence. Such statements are excluded, because they have not borne the test of cross-examination and are given without the sanction of an oath. There is no opportunity of inquiry into the character of declarant and his motives for making the statement. Those who repeat such declarations to the court stand upon the simple assertion that the statements were made, and are not obliged to enter into particulars or explain ambiguities in the declarant's statement. If called upon to do so, they could satisfy the inquiry by repeating what they heard.

"There are, however, exceptions to the hearsay rule which authorizes the reception of admissions and declarations against interest. Declarations, to be distinguished from admissions, as to facts relevant to the matter of inquiry, are admissible in evidence when it appears that the declarant is dead, that the declaration was against his pecuniary or proprietary interest, and that he had no probable motive to falsify the fact declared." *Id.* at 277, 61 S.W.2d at 673.

Plaintiff admits in her pleadings that she and her husband, Jim Frank Hargis, were tenants by the entireties until the time of his death. The nature of the case makes it clear that the statement made by Jim Frank Hargis at the time the gate was installed was against his proprietary interest in asserting ownership of the county road.

Plaintiff's reliance on *Moore v. Cole,* 200 Tenn. 43, 289 S.W.2d 695 (1956), and *Sloan v. Jones,* 192 Tenn. 400, 241 S.W.2d 506 (1951), is ill-founded. *Moore* involved a transfer, by a co-tenant, of property through a "strawman" to himself and his wife in an attempt to start the seven-year statute running as against his co-tenant. *Sloan* involved the devolution of personal property upon the death of a co-tenant in a tenancy by the entirety. Neither case deals with the issue at hand.

The statement of Jim Frank Hargis was admissible as a declaration against interest. This assignment of error is without merit.

■ Plaintiff next contends that she was an innocent purchaser for value without notice of the easement and, as such, did not take the estate burdened by the easement.

It is a well established principle of law that:

"A person who purchases land with knowledge or with actual, constructive, or implied notice that it is burdened with an easement in favor of other property ordinarily takes the estate subject to the easement." 25 Am.Jur.2d *Easements and Licenses* Sec. 97.

The record contains much testimony concerning plaintiff's inspection of this property, both prior and subsequent to the purchase. It also contains contrary evidence from the defendants and neighbors as to the existence of the road and its use, although infrequently, by them over the course of many years.

· The trial judge's findings are entitled to great weight where he saw and heard the witnesses and observed their manner and demeanor on the stand. The appellant, on appeal, has the burden of showing that the evidence preponderates against the findings of the Chancellor. T.C.A. Sec. 27–303 (Supp.1977).

The Court is of the opinion the plaintiff has failed to rebut the presumption of correctness on this issue. This assignment of error is without merit.

■ Plaintiff next contends that the Chancellor erred in failing to find that the road had been abandoned by the public and the defendants' right to use it was forfeited under any claim they might make as an abutting landowner or otherwise. Plaintiff cites *Shelby v. State,* 29 Tenn. (10 Humph.) 165 (1849), and *City of Knoxville v. Sprankle,* 9 Tenn.App. 218 (1928), for the proposition that, "non-user, plus intent, constitutes an abandonment. While the establishment of a new way does not necessarily work an abandonment of a pre-existing way between the same points, where the new way is substituted for the old and is accepted by the public and used by the public instead of the old road, for even a few years, and where the change was made by public authority, there is a combination of both non-user and intent to abandon and the road ceases to be a public road".

*City of Knoxville v. Sprankle* is inapposite to the facts at hand. In *City of Knoxville v. Sprankle,* the road was private rather than a public thoroughfare:

We do not think under the facts of this case that any prescriptive right of way has been acquired either public or private in that portion of the road covered by the defendants' land. The road was laid out in 1903 and an effort made to have it accepted and the obligation of its upkeep taken over as a county charge, and . . . it does not appear that he [sic] county court ever accepted such obligation or recognized the public need of such a road. 9 Tenn.App. at 221.

In the instant case, neither party contests the status of this road as a public thoroughfare at the time of its creation.

*Shelby v. State* is also inapplicable to the facts at hand. As to non-user, the Court stated:

It might very well be admitted that the right of way or "easement" acquired by the public, in the present case, has not been lost by non-user; but on the contrary, that it might be resumed if deemed proper by the public. Though on this point we, at present, mean to express no opinion. 29 Tenn. at 166.

However, *Shelby v. State* continues on to create a presumption of abandonment if:

[T]he public cease to use a road, and adopt another, and thereupon the owner of the soil over which the old road passed, resume the use and occupancy thereof, and the public acquiesce therein for the period of three years, . . . [The presumption arises] in absence of *all* evidence indicating a contrary intention on the part of the public. [emphasis added] *Id.*

As to what constitutes "all evidence indicating a contrary intention", the Court continues:

The use of the old road by a few individuals in the immediate vicinity thereof, for the purposes of mere private convenience, furnishes no evidence sufficient to repel the presumption of abandonment by the public. Id. at 166–67.

This latter language would appear to substantiate plaintiff's contention of abandonment. However, the opinion affords no insight as to what constitutes the "private convenience" of the "few individuals in the immediate vicinity". In the instant case, the use of the road by the defendants to gain ingress and egress to a portion of their property, to repair and maintain their property, and to transact business associated with their property cannot be deemed a mere "private convenience".

It should also be recognized that *Shelby v. State* involved a criminal prosecution under a statute that is not discernible from the opinion.

■  Plaintiff also contends the finding of the Chancellor that defendants' property abuts the roadway is error. In light of the Chancellor's correct determination that the road was not abandoned, this issue is moot.

■  Plaintiff would also have the Court read the judgment below as improperly stating that "[t]here could be *no* effective abandonment of a county road and that the public could lose its right to continue to use the road only where the road had been closed by the County Court in accordance with Sec. 54–905 to 54–915 of Tennessee Code Annotated".

Such a reading of the judgment would be erroneous.

The judgment states:

It satisfactorily appears to the Court that the roadway . . . has not been closed by any proceedings before the County Court of Jackson County.

It is evident that the Chancellor was merely recognizing that the road had not been closed by official government action in accordance with Tennessee Code Annotated.

■  Plaintiff's contention that the Chancellor erred in refusing to hold that defendants abandoned their right to use the road is inconsistent with the evidence adduced at trial. The record contains ample evidence as to the use of the road by defendants albeit on an irregular basis.

Plaintiff cites *Rogers v. City of Knoxville,* 40 Tenn.App. 170, 289 S.W.2d 868 (1955), to support her contention of defendants' abandonment. *Rogers v. City of Knoxville* is distinguishable from the facts at hand. There the public service corporation which constructed the transmission lines across the defendant's property had appropriated the land without condemnation proceedings and, as such, had only a possessory right and not a transmissible one. Thus, when the original appropriator's successor in title dismantled the line and allowed the easement to remain unused for more than eight years, the easement was adjudged abandoned.

In the instant case, such lengthy non-user is not evidence from the record. In addition, the defendants did not engage in any of the types of action evident in *Rogers v. City of Knoxville* which would indicate an intent to abandon. This record is devoid of any evidence of intent to abandon on the defendants' part. To the contrary, there is ample evidence of defendants' actions taken to protect their use of this roadway.

The Chancellor properly found that defendants had not abandoned their right to use the road.

■  Finally, there remains to be settled the plaintiff's claim of adverse possession of the roadway.

3 Am.Jur.2d *Adverse Possession* Sec. 24 (1962) states:

Casual fencing: inclosure with other land. By casual fencing is meant the making of an inclosure by joining onto existing fences erected for purposes other and different from, and wholly foreign to, the purposes for which the inclosure thus made is to be used.

The fencing on the southwest corner of defendants' property and running north along the road was used to separate defendants' property from the roadway itself. Plaintiff's predecessor in title extended his fencing across the road and attached it to defendants' fence. If plaintiff's predecessor in title had had a fence running north on the eastern boundary of his property, fencing off the road would have been unnecessary to prevent his livestock from escaping. If, in fact, there was no fence on the eastern boundary or if such fence was in disrepair, livestock could not be contained on the property proper.

Casual fencing is a weakening element in a limitation claimant's case, and where the fencing is not only casual but practically the whole of it constitutes a purpresture in the public way, and incloses a temporarily unused but substantial portion of the public streets, the claimant's asserted claim of right remains far from proved when nothing more than grazing within such fences is shown. *Id.*

Rather than establishing an adverse possession claim, this evidence is truly a "weakening element".

Further, when plaintiff's husband installed the gate, his statement to Defendant B. H. Collier refuted any adverse claim to the roadway. In addition, when the gate was locked in September 1975 this suit, in immediate reaction thereto, prevented the establishment of an adverse possession claim under any of the statutes cited by plaintiff, the statutory time requisite being tolled.

Plaintiff asserts that the trial Court failed to dispose of all the questions during the trial. Specifically, the plaintiff requested the Court to determine the distance up the roadway the defendants could travel. The northernmost portions of the road is now under water in the Cordell Hull Lake. However, as this road was, and still is, a county road open to the public, it was unnecessary for the Chancellor to make any determination on this matter.

It results that all assignments of error are overruled and the judgment of the Chancellor is affirmed. The costs are adjudged against plaintiff.

SHRIVER, P. J., and DROWOTA, J., concur.