## IN THE COURT OF APPEALS OF TENNESSEE, WESTERN SECTION
## AT JACKSON

_____

|  |  |  |
|---|---|---|
| **TY FARMING COMPANY, INC. ,** | ) | Dyer County Circuit Court |
|  | ) | No. 93-285 |
| Plaintiff/Appellant, | ) |  |
|  | ) |  |
| VS. | ) | C. A. NO. 02A01-9510-CV-00232 |
|  | ) |  |
| **GEORGE BELEW and THE** | ) |  |
| **COUNTY OF DYER, TENNESSEE,** | ) |  |
|  | ) |  |
| Defendants/Appellees. | ) |  |
|  | ) |  |

_____

From the Circuit Court of Dyer County at Dyersburg.
**Honorable Joe G. Riley, Judge**

FILED

November 8, 1996

Cecil Crowson, Jr.
Appellate Court Clerk

**Ralph I. Lawson**,
LAWSON & LANNON ATTORNEYS, Dyersburg, Tennessee
Attorney for Plaintiff/Appellant.


**James S. Wilkes**,
WILKES & DYER, Dyersburg, Tennessee
Attorney for Defendant/Appellee George Belew.


**Douglas W. Wilkerson**,
**J. Michael Gauldin,**
WILKERSON GAULDIN & HAYES, Dyersburg, Tennessee
Attorneys for Defendant Appellee County of Dyer.


OPINION FILED:

**AFFIRMED**


**FARMER, J.**


**HIGHERS, J.** : (Concurs)
**LILLARD, J.** : (Concurs)

Plaintiff-Appellant, TY Farming Company, Inc. ("TY Farming"), appeals the judgment of the trial court denying TY Farming's claims against Defendants-Appellees Dyer County ("Dyer County") and George Belew ("Belew") relative to a dirt road which crossed properties owned by TY Farming, Belew, and other landowners in Dyer County. The trial court found that the dirt road had been abandoned by the County and the general public, that the road was no longer a public road, and, therefore, that the County had no obligation to maintain the road. Accordingly, the judgment denied TY Farming's claim for damages against the County and dismissed the County from the lawsuit. With regard to TY Farming's claim against Belew, the judgment granted TY Farming an easement across the property of Belew. The trial court further found that Belew had deprived TY Farming of its previously existing easement of ingress and egress to its property, but the court found that TY Farming had suffered no damages because it had continuous access to its property by another route. Accordingly, the trial court denied TY Farming's claim for damages against Belew and dismissed TY Farming's complaint in its entirety.

## I. Background

TY Farming, which is solely owned by Tom Yarbro, owns a 165-acre tract of land in Dyer County. The only access to TY Farming's property is over the dirt road that is the subject of this lawsuit. The road crosses TY Farming's property and other properties before connecting with Harris Road, a paved County road to the east. At trial, TY Farming traced the existence of the dirt road back to 1888, the year a Dyer County Chancery Court declared the road to be a County road. In the late 1800's and early 1900's, a number of families lived along the dirt road, and the road was well-traveled. Over the years, residents reached their homes by traveling the dirt road by foot, mule, horseback, wagon, buggy, and, later, automobile. To maintain the dirt road, the County periodically graded the road with County equipment.

By 1950, no families remained living along the dirt road and Charles Yarbro, Tom Yarbro's uncle, had purchased the property which now belongs to TY Farming. In the early to mid 1950's, the County graded the road at the request of Tom Yarbro's grandfather, Guy Yarbro, to enable the Yarbros to drive a truck on the road when they cut fence posts on the property. At one point during his ownership of the property, Charles Yarbro erected an ornamental gate across the

road. He testified, however, that the gate was not permanent and secure because it was "just wired up on one end," and that the gate's purpose was merely to mark the property line.

Most of the witnesses who testified could not remember using the road after the 1930's or 1940's. Tom Yarbro remembered traveling the road in the 1960's but acknowledged that maintenance on the road by that time was "very minimal." Use of the road in the 1970's and 1980's was limited to adjoining landowners, who used the road to haul timber off their properties. Troy Moody, a former road grader for the County, testified that he last graded the road in 1952. Billy Hall, a foreman with the County road department, testified that the road may have been graded as late as the early 1970's.

The evidence was undisputed, however, that since the early 1970's, the County had performed no maintenance on the road, with the exception of a portion of the road which led to a gravel pit on a neighboring landowner's property. The testimony revealed that the County performed this maintenance, including grading and gravel work, in the 1970's and early 1980's for the sole purpose of allowing the County access to the gravel pit to withdraw gravel. Although adjoining property owners were permitted to continue using this portion of the road to gain access to their properties, the County placed a cable or gate across the road near the gravel pit to discourage members of the public from using the road. In the early 1980's, the County was required to submit a map identifying all County roads to the Tennessee Department of Transportation. The map submitted by Dyer County in April 1983 did not include the subject road, and the current County road map also failed to include the road.

When Tom Yarbro purchased the property in 1988, he believed that the road was still a public road, and he contacted County road commissioner Jeff Jones to ask about requiring the County to maintain the road. Taking the position that the road had not been a public road in over forty years, the County road committee declined to perform any maintenance on the road. A surveyor hired by TY Farming in 1991 described the road as a "[m]uddy unimproved track," approximately ten to fifteen feet in width. According to some witnesses, portions of the road were impassable except by foot or four-wheel drive vehicle. Since filing this lawsuit, TY Farming had improved the road considerably by doing grading and gravel work on the road.

In 1992, the County approved a subdivision plat for Bluff View Subdivision which was submitted by Defendant Belew. The dirt road crossed the southern part of Belew's property, and Belew's plat, as recorded, effectively subsumed or blocked portions of the road which Tom Yarbro had been using to gain access to TY Farming's property. The only accommodation made in the plat for TY Farming was a thirty-foot easement shown across Lot 5 of the subdivision; however, the testimony showed that the easement was impassable because it led into a deep gully or ravine. One of the subdivision's new streets, Cane Creek Lane, paralleled the dirt road for a distance before ending in a cul-de-sac or dead-end. Instead of crossing Belew's property by using the easement shown on the plat, Tom Yarbro traveled on Cane Creek Lane until it ended in the cul-de-sac, and then traveled across Lot 5 at a passable location to reach TY Farming's property. Although he believed that he was trespassing on Belew's property, Tom Yarbro has continued to have uninterrupted access to TY Farming's property in this manner.

In April 1993, TY Farming filed this lawsuit against the County and Belew.[1] In its amended complaint, TY Farming alleged that it had suffered damages as a result of the Defendants' "unauthorized, illegal and wrongful closing and blocking of a long existing county public roadway." On appeal from the trial court's judgments rejecting its claims, TY Farming presents the following issues for review:

I. Whether the Trial Court erred in ruling that there was a preponderance of evidence to support the holding that the subject road had been abandoned by the County and the general public, thereby refusing to declare the road to be an existing county public roadway.

II. Whether the Trial Court erred in holding that there was no obligation or responsibility on the County to maintain the road.

III. Whether the Trial Court erred in finding that [TY Farming] had never been deprived of access to its property as a result of the acceptance and approval by the County of [Belew's] Bluff View Subdivision Plat in 1992.

IV. Whether the Trial Court erred in holding [TY Farming] could not recover damages from the County thereby dismissing the County from the action without a hearing on damages.

---

[1]TY Farming's complaint also named Dallas and Mattie Sue Castleman, the owners of certain lots within the subdivision. The suit against the Castlemans was later dismissed by consent order and they are not parties to this appeal.

V.  Whether the Trial Court erred in holding [TY Farming] had access to its property across other lands of Defendant, Belew.

VI.  Whether the Trial Court erred in establishing the width and the location of the thirty (30) foot easement across Defendant Belew's lands, considering existing county regulations.

VII.  Whether the Trial Court erred in holding [TY Farming] suffered no damages as a result of Defendant Belew's actions.

## II.  Abandonment of the Road

We first conclude that the evidence does not preponderate against the trial court's finding that the subject road had been abandoned.  This court affirmed a finding of abandonment under similar circumstances in *Farr v. Pentecost*, 1994 WL 12617 (Tenn. App. 1994), wherein we stated that:

> Tennessee courts have held that evidence of mere nonuse alone does not establish abandonment, *Jacoway v. Palmer*, 753 S.W.2d 675, 677-78 (Tenn. App. 1987), nor will a city or county's failure to maintain a public road when it is being used by the public. *Cartwright v. Bell*, 418 S.W.2d 463, 469-70 (Tenn. App. 1967). There must be a positive showing of an intention to abandon. *Jacoway*, 753 S.W.2d at 679.  [Footnote omitted].  The time of nonuse is of no importance except as indicative of intent.  *Id.*

*Farr v. Pentecost*, 1994 WL 12617, at *3.  Further, "[t]he abandonment of a public road must be established by clear and unequivocal evidence of decisive and conclusive acts."  *Cockroft v. Claunch*, 1992 WL 69621, at *4 (Tenn. App. 1992).

In *Farr v. Pentecost*, we examined evidence of several factors, including use of the road by the public, the condition of the road, maintenance of the road by the county or by the parties, and any activity inconsistent with the use of the property as a public road.  *Farr v. Pentecost*, 1994 WL 12617, at *3.  In affirming the trial court's finding of abandonment, we reasoned:

> In the instant case, . . . there is clear and unequivocal evidence that Jackson Avenue has not been used as a public road for many years and has been in no condition to be used as such, that the county has

> never maintained the road, that the parties do not maintain it as a road, and that activity inconsistent with the use of the property as a public road has occurred on the property for many years.

*Farr v. Pentecost*, 1994 WL 12617, at *3.

As in *Farr v. Pentecost*, we conclude that the clear and unequivocal evidence in this case establishes that the subject road had been abandoned. The evidence was undisputed that all residents living along the road had left by the year 1950 and that the public ceased using the road around that time. The County's maintenance of the road since the 1950's was minimal; and, with the exception of the portion of the road leading to the gravel pit, the County had not performed any maintenance on the road in at least twenty years. When the County improved the portion of the road leading to the gravel pit, the County placed a cable across the road to prevent members of the public from using the road, although the County permitted adjoining landowners to continue using the road.[2] The County's official road map, created in the early 1980's, did not include the subject road. When Tom Yarbro requested the County to maintain the road, the road was a muddy unimproved track which was impassable in some places except by foot or four-wheel drive vehicle. In light of this evidence, we affirm the trial court's finding that the road had been abandoned and, thus, was no longer a public road.[3] Consistent with our holding, we likewise affirm the trial court's ruling that the County has no obligation to maintain the road. *See Templeton v. Sumner County*, 1992 WL 207763, at *2 (Tenn. App. 1992) (noting that statute requires county to maintain only public roads and bridges, citing T.C.A. § 54-8-102 (1988)).

### III. The Easement Across Belew's Property

The trial court determined that TY Farming's easement for ingress and egress to and

---

[2]We note that this limited use of the road by the adjoining landowners does not preclude a finding of abandonment. *See Hargis v. Collier*, 578 S.W.2d 953, 958 (Tenn. App. 1978); *accord Lumpkin v. Hughes*, 1989 WL 70768, at *2 (Tenn. App. 1989).

[3]TY Farming also contends that an effective abandonment of the road could not occur because the County failed to comply with the statutory procedures for closing the road. *See* T.C.A. §§ 54-10-201 to -215 (1993). We note, however, that previous decisions of this court have rejected this argument. *See Hargis v. Collier*, 578 S.W.2d 953, 958 (Tenn. App. 1978); *accord Farr v. Pentecost*, 1994 WL 12617, at *3 (Tenn. App. 1994); *Lumpkin v. Hughes*, 1989 WL 70768, at *2 (Tenn. App. 1989).

from its property was along Cane Creek Lane to the cul-de-sac. From the cul-de-sac, the trial court awarded TY Farming a thirty-foot easement running through another portion of Lot 5 of Bluff View Subdivision at a passable location.[4] On appeal, TY Farming contends that the trial court erred in establishing the width of its vehicular easement at only thirty feet because such a ruling precludes any future development of TY Farming's property. In support of this contention, TY Farming points to Dyer County's subdivision regulations, which require residential streets, as well as vehicular easements serving more than one lot, to be at least fifty feet wide. *See* Dyer County, Tenn., Subdivision Regs. art. IV (1992). With only a thirty-foot easement, TY Farming asserts, it will be unable to subdivide or further develop its property. We believe TY Farming's contention on this point to be without merit because, if this court were to accept TY Farming's position and grant the relief requested, this court in effect would be awarding TY Farming a greater right of access than it had previous to Belew's development of the subdivision.

The law is clear that, even after a public road is abandoned, the abutting landowners continue to have a private easement of access to their premises over the old road. *See Knierim v. Leatherwood*, 542 S.W.2d 806, 810 (Tenn. 1976); *Cartwright v. Bell*, 418 S.W.2d 463, 470-71 (Tenn. App. 1967); *Paschall v. Valentine*, 321 S.W.2d 568, 570 (Tenn. App. 1958); *accord Buckingham v. Thomas*, 1996 WL 20527, at *3 (Tenn. App. 1996); *McClure v. Hurdle*, 1993 WL 151342, at *3 (Tenn. App. 1993). The landowner's easement, however, is limited to such streets or ways as are necessary to the landowner's ingress or egress. *See Knierem v. Leatherwood*, 542 S.W.2d at 811; *see also Mason v. State*, 656 P.2d 465, 469 (Utah 1982) (concluding that abutting property owner's right to preserve status quo entitles owner to easement over abandoned public road only where and to extent necessary for ingress and egress to and from property); 39 Am. Jur. 2d *Highways, Streets, and Bridges* § 185 (1968) (indicating that private easements of access which survive abandonment of public road "are only such as are required for reasonable means of ingress and egress").

In accordance with the foregoing authorities, after the subject road in this case was

---

[4]The precise location of the thirty-foot easement through Lot 5 was changed in a subsequent order of the trial court entered on Belew's motion for clarification, but this change is not relevant to any issues on appeal.

abandoned, TY Farming still had a private easement of access to its premises over the old road. This private right survived Belew's later recordation of the plat for Bluff View Subdivision, even if, as TY Farming urges, approval and recordation of the plat effectively closed the road. *See Cartwright v. Bell*, 418 S.W.2d 463, 470 (Tenn. App. 1967) (noting that closing of county road could not affect private rights of abutting landowners to easements of access). Contrary to TY Farming's contention on appeal, however, this right did not entitle TY Farming to an easement of greater access than TY Farming had before Belew's recordation of the subdivision plat.

As the trial court found, the subject road was abandoned well before Belew's development of Bluff View Subdivision. In 1991, before the subdivision plat was approved and recorded, TY Farming had an easement of access in the abandoned road. TY Farming's surveyor testified that, at that time, the old road bed which TY Farming was using to access its property was at most fifteen feet in width. Under these circumstances, the trial court did not err in establishing thirty feet as the width for TY Farming's easement of access. TY Farming has cited no authority for the proposition that, in recording his subdivision plat, Belew was required to provide TY Farming with any greater right of access than TY Farming had previously.

### IV. TY Farming's Claims for Damages

Finally, we affirm the trial court's denial of TY Farming's claims for damages against the County and Belew. Specifically, TY Farming claimed $43,750 in damages for a lost gravel sale and $37,000 in nuisance damages on the ground that the Defendants effectively blocked TY Farming's access to its property.[5] The trial court denied TY Farming's claims for damages based on the court's finding that TY Farming had never been deprived of access to its property and, in fact, had enjoyed continuous access across another portion of Lot 5. We conclude that the evidence does

---

[5]TY Farming also requested damages for the diminution in value of its property due to the closing of the public road. As we previously discussed, however, the public road was abandoned well before development of the Bluff View Subdivision; therefore, neither the County's approval nor Belew's recordation of the subdivision plat resulted in the closing of the road.

not preponderate against such a finding.

At trial, the evidence was undisputed that TY Farming's owner had enjoyed continuous, uninterrupted access to the property by traveling down Cane Creek Lane and crossing Lot 5 at a more passable location than that shown on the subdivision plat. Tom Yarbro testified that, after development of the subdivision, he was able to access TY Farming's property in this manner without experiencing any problems. The Defendants have never attempted to interfere with Yarbro's access to the property. Although Yarbro feared that he was trespassing, he never was stopped for trespassing, and he never was warned that he was trespassing. Under these circumstances, we conclude that the trial court did not err in denying TY Farming's claims for damages against the Defendants based on any interference with TY Farming's use of the old road. *See Mason v. State*, 656 P.2d 465, 469 (Utah 1982) (noting that abutting property owner cannot recover damages for deprivation of access to public road "so long as there is some alternative means of access to his property that is 'adequate and reasonable').

## V. Conclusion

The trial court's judgments denying TY Farming's claims against the County and Belew are affirmed. Costs of this appeal are taxed to TY Farming, for which execution may issue if necessary.

_____
FARMER, J.


_____
HIGHERS, J. (Concurs)


_____
LILLARD, J. (Concurs)