**STATE of Tennessee, On the Relation of Robert C.H. MATTHEWS, Jr., William S. Cochran and Robert J. Walker d/b/a Ambrose Associates, A Tennessee Partnership, Plaintiffs-Appellees,**

v.

**METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, Tennessee and Third National Bank in Nashville, Defendants-Appellants.**

Supreme Court of Tennessee,
at Nashville.

Nov. 13, 1984.

Thomas P. Kanaday, Jr., Rachel L. Steele, Nashville, for defendants-appellants.

Steven A. Riley, Nashville, for plaintiffs-appellees.

## OPINION

BROCK, Justice.

### I

This is a mandamus action. The relator, Ambrose Associates, brought this action to compel the Metropolitan Government of Nashville and Davidson County to remove an obstruction in an alley in downtown Nashville, pursuant to the duty imposed upon the Metropolitan Police Department under Metropolitan Code, § 38–2–6.

The alley in question runs from Fourth Avenue to Printers' Alley. Church Street runs parallel to the alley. The J.C. Bradford Building, owned by defendant Third National Bank, is located on the parcel of land bounded by the alley, Fourth Avenue, Church Street and Printers' Alley. The Ambrose Building, owned by the relator, is located on the other side of the alley.

Metropolitan Code, § 38–2–6, imposes a duty upon members of the police department to remove obstructions on public streets or alleys if the party responsible for the obstruction fails to remove it upon request.[1] For many years, Third National Bank has placed its garbage cans or dumpsters in the alley, thereby obstructing it. The relator notified the Metropolitan Police Department of the obstruction, and, pursuant to § 38–2–6, that department asked Third National Bank to remove the dump-

---

1. Metropolitan Code, § 38–2–6, reads as follows:
   "Should any rocks, wood, lumber or other obstructions whatever be permitted to remain on the public square or any street or alley in the urban services district, it shall be the duty of the members of the police department to request the person so offending to remove such rocks, wood, lumber or other obstruc- tions; and if the same shall not be forthwith removed by such offender, it shall be the duty of such member of the police department to remove the same. In addition to any penalty imposed for the violation of this section, the person offending shall be liable to pay double the expense of removing such rocks, lumber or other obstruction."

sters. The defendants refused, contending that the alley was not a public alley. The police department took no further action, and this suit followed.

The Chancellor found that the alley is a public alley, and ordered the Metropolitan Government to remove the obstruction. Defendants brought this appeal.

Defendants first argue that mandamus is an inappropriate remedy in the case because a dispute exists as to whether the alley is public or private.

■ The proper use of the remedy of mandamus is well summarized in *Peerless Construction Co. v. Bass*, as follows:

"The office of mandamus is to execute, not adjudicate. It does not ascertain or adjust mutual claims or rights between the parties. If the right be doubtful, it must be first established in some other form of action; mandamus will not lie to establish as well as enforce a claim of uncertain merit. It follows therefore that mandamus will not be granted where the right is doubtful." 158 Tenn. 518, 520, 14 S.W.2d 732, 732 (1929), *quoting Ferris on Extraordinary Legal Remedies*, § 194.

Defendants place primary reliance on our opinion in *Peerless, supra.* In that case, a construction company which had performed work for the state on a road project sought to compel the State Highway Commissioner to pay it additional compensation for extra work performed. The Commissioner disputed the amount of the claim. This Court relied upon the rule quoted above to hold that mandamus did not lie.

■ We continue to adhere to the rule stated in *Peerless.* We are of the opinion, however, that the right relator seeks to enforce is not doubtful. A reading of *Peerless* reveals that the right sought to be enforced in that case was doubtful because, although the Commissioner had a ministerial duty to disburse funds to pay the just claims of his department, he was vested under the law with quasi-judicial discretion to determine the validity and amount of the claim. Because the Commissioner disputed

the claim, mandamus was not available. In contrast, the dispute in the present case concerns the public status of the alley. The Metropolitan Police Department is not vested with discretion to determine whether a particular alley is a public alley. The defendants' denial that the alley is public does not render the right doubtful so as to prevent the application of the remedy of mandamus.

Our resolution of this issue is supported by the mandamus statute. T.C.A., § 29-25-107, provides that the court, in a mandamus proceeding, may determine contested facts upon evidence or cause them to be submitted to the jury. Our determination is also supported by recent precedent. We have held that if the right to the issuance of a writ of mandamus is dependent on the unconstitutionality of a statute or ordinance, a court has the power to pass upon the question of its validity in the mandamus proceeding. *See State ex rel. S.C.A. Chemical Waste Services, Inc. v. Konigsberg*, 636 S.W.2d 430 (Tenn.1982).

■ Defendants next challenge the Chancellor's finding that the alley is a public alley. To establish that the alley has been dedicated to public use, the plaintiff must show that there was an offer of dedication and a public acceptance of the offer. *See Smith v. Black*, 547 S.W.2d 947 (Tenn. App.1977). Both the offer of dedication and the public acceptance may be express or implied. *McCord v. Hays*, 202 Tenn. 46, 302 S.W.2d 331 (1957).

■ The purported offer of dedication in this case arose in the following context. The land which the J.C. Bradford Building now occupies and the land which is now the alley was at one time owned by Mrs. C.B. McNairy. Mrs. McNairy died intestate in 1873, and in 1881 this Court ordered its clerk to sell the property to satisfy the debts of her estate. The land ran 115 feet back from Church Street. The clerk divided it into six parcels and sold them at auction. An alley of ten feet was "especially reserved," and, accordingly, each deed described the property conveyed as

running back from Church Street 105 feet to an alley of 10 feet. Third National Bank now owns all six parcels.

Defendants contend that the clerk intended to create a private alley for the exclusive use and benefit of the six newly created parcels. We do not find the contention to be persuasive. Instead, we agree with the Chancellor that the facts and circumstances outlined above imply an intent to offer the alley for public use. The creation of the alley enhanced the value of the parcels by providing access to the rear of the parcels from Fourth Avenue and Printers' Alley. By offering the alley for public rather than private use, the clerk was able to relieve Mrs. McNairy's heirs of the burden of maintaining the alley and paying taxes on the land. Such action is consistent with the clerk's fiduciary duty to act in the best interest of the estate.

■ As indicated above, an offer of dedication must be accepted before a dedication to public use is complete. Public acceptance of an offer of dedication may consist of either a formal act on the part of public authorities or common use by the general public. McCord v. Hays, supra, 202 Tenn. at 55, 302 S.W.2d at 335; 9 Michie's Tennessee Jurisprudence, Dedication, § 4, pp. 153–154.

■ Not surprisingly, there is little direct proof of the extent of public use of the alley in the years immediately following the offer of dedication in 1881. The alley has been used by pedestrians to go between Fourth Avenue and Printers' Alley for many years. The alley appears in atlases dated 1889, 1908, and 1928. Although it is not specifically labeled as a public alley on those atlases, it is shown in a manner which is consistent with its status as a public alley. The reasonable inference to be drawn from the facts and circumstances above is that public use of the alley was significant in the early years following the dedication. That public use constitutes a public acceptance of the offer of dedication.

Our conclusion derives support from the proof relating to the use of the alley by the public and the treatment of the alley by the Metropolitan Government in subsequent years.

Pedestrians have continued to use the alley as a walkway. Although many of the pedestrians are from the J.C. Bradford Building, some are from the Ambrose Building and others are not associated with either building. Vehicles have made use of the alley to make deliveries and to park.

There is no proof in the record that the Metropolitan Government has done any maintenance work on the alley. However, the proof clearly establishes that in other respects the city has treated the alley as a public alley. In 1965, the city passed an ordinance adopting an "Official Street and Alley Acceptance and Maintenance Map" which shows the alley as Public Alley No. 17. In addition, no taxes have been assessed on the property. The Department of Public Works gave the Nashville Electric Service permission to locate a utility vault underneath the alley.

■ The Department of Public Works also gave its approval to the Ambrose Associates for the construction of steps which protrude from its building out into the alley. Ambrose Associates did not obtain a private ordinance as required when encroaching upon a public alley. See Metropolitan Code, § 38–1–2. However, even the approval of the Department of Public Works is not required when encroaching upon a private alley. Thus, it is true that the procedure followed is not fully consistent with the public status of the alley; however, it is also not consistent with the private status of the alley. For this reason, we do not find the failure to obtain the private ordinance to be of significance.

Because we have found that the offer of dedication was accepted shortly after it was made in 1881, we find it unnecessary to consider defendants' argument that the offer lapsed before it was accepted due to the passage of time.

The judgment of the Chancellor is affirmed. Costs on appeal are taxed against the defendants-appellants.

COOPER, C.J., and FONES, HARBISON and DROWOTA, JJ., concur.