TOWN OF BENTON, Plaintiff–Appellee,

v.

PEOPLES BANK OF POLK COUNTY,
Defendant–Appellant.

Bobby BISHOP and Nyokia Bishop,
Plaintiffs–Appellees,

v.

PEOPLES BANK OF POLK COUNTY,
Defendant–Appellant.

Court of Appeals of Tennessee,
Eastern Section.

April 28, 1995.

Published Pursuant to Tenn.Ct.App.R. 11.

Robert L. McMurray and Roger E. Jenne, Cleveland, for appellant.

Jeffrey A. Miller, Cleveland, for appellee Town of Benton.

Bobby Bishop, Jr., Knoxville, for appellees Bobby Bishop and Nyokia Bishop.

## OPINION

SUSANO, Judge.

The Peoples Bank of Polk County decided to enlarge its bank facility located at the northwest corner of Maggie Street and U.S. Highway 411 in Benton, Tennessee. The

bank's plans called for the addition of two drive-through lanes to the one already in place on the south side of its building. The Town of Benton resisted the bank's plans because the addition would physically extend out into Maggie Street, which runs east and west, thereby necessitating the closing or re-routing of that street. This controversy prompted the Town to file a complaint seeking an injunction against the bank "from committing waste, blockading, closing or in any way obstructing the use and enjoyment of Maggie Street." After a non-jury hearing[1], the Chancellor found that the strip of land the bank intended to use was not a part of the bank's property, but was rather a public thoroughfare.

The bank appeals, arguing that the evidence preponderates against the trial court's finding that the property at issue belongs to the Town. The bank agrees that the trial court was correct in relying on an official 1910 plat of Benton; but it argues that the Chancellor erred when he also relied upon a survey that, the bank argues, is inconsistent with the 1910 plat. The Town argues that the evidence does not preponderate against the Chancellor's findings. In the alternative, it contends that if the strip of land in question belongs to the bank, the public has the right to use it as a public street by virtue of the doctrine of prescriptive easement or implied dedication.

As the trial court correctly pointed out, this is a boundary line dispute rather than an action to close a street. At issue is the location of the bank's south property line. If the bank is correct, it owns substantially all of a paved area which has served for some time as a public street, i.e., Maggie Street.

## I

In March, 1974, the bank purchased four contiguous lots representing a block in the business district of the Town of Benton. Thereafter, it constructed a bank building, including a single drive-in lane on the south

side of the building. The legal description of the property in the bank's deed is as follows:

SITUATED and being in the First Civil District of Polk County, Tennessee and in the Town of Benton, and Being Lots No. One Hundred Ninety–Two (192), One Hundred Ninety–Three (193), Two Hundred Three (203), and Two Hundred Four (204) in the Town of Benton as more fully described in a plat or map dated 1910[2] and recorded in Plat Book 1, page 41, in the Register's Office for Polk County, Tennessee.

The east side of the bank's property fronts on U.S. Highway 411.

A witness for the bank testified that the bank positioned its building on the property so that it could accommodate up to three drive-in lanes, side-by-side, on the south side of the building should the demand for such drive-in service later be warranted. Bank officials also testified that the bank had installed a tube underground extending out from the existing drive-in lane next to the building so as to accommodate future drive-in expansion.

According to the testimony of the plaintiff Bobby Bishop, the bank approached the Town's commissioners in 1974 to request permission to extend the existing portion of Maggie Street eastward and connect it to U.S. Highway 411. The bank wanted Maggie Street to pass along the southern edge of the bank's property, thereby giving easier access for vehicular traffic to the drive-in window. Although apparently no minutes were kept of the meeting, Bishop testified that he and the other commissioners voted to let the bank extend Maggie Street.

According to the testimony of Benton's mayor and its director of federal projects, Benton subsequently received a federal Housing and Urban Development (HUD) grant to pave some of the Town's streets. Benton held public hearings on the grant application, and both the mayor and the Town's director of federal projects testified at trial that bank officials attended one of the

---

1. A property owner whose land abuts Maggie Street filed a separate suit against the bank. That suit and Benton's suit were consolidated for trial.

2. The 1910 plat is the oldest available plat of the Town. The county courthouse burned in 1892.

meetings and spoke in support of the repaving project. Both city officials testified that some of the grant money was subsequently used in 1978 to repave Maggie Street. The Town's street commissioner testified that he maintains the stop signs along Maggie Street, using Town money to do so. He also testified that the Town generally maintains the surface of Maggie Street. A photographic exhibit in the record before us shows the eastward extension of Maggie Street passing by and to the south of the bank building and its existing drive-in lane. There is a stop sign at the intersection of Maggie Street and U.S. Highway 411.

Sometime during 1992, the bank decided to install two additional drive-through lanes. The two new lanes would extend outward from the existing building into Maggie Street, necessitating the appropriation of the paved area of Maggie Street. The bank's president and chief executive officer testified that he contacted the mayor to request permission to close Maggie Street and was told by the mayor that the latter recognized that the property did not belong to the Town and "we could do what we pleased with it." Under cross-examination, the bank president stated that the mayor later called him back and said that the 1910 plat "showed that that was a [public] street." Although the Town and bank officials continued to discuss the bank's proposed expansion, nothing definitive occurred until the bank's president notified the mayor that "[w]e're going to block the road ... It's my street." This litigation ensued.

At trial, the Town called a registered surveyor who testified that he conducted a survey of Town property lines by "work[ing] off of the courthouse walls" and then tying in "walls, edge of pavements, any physical evidence that we could note on the ground." The surveyor noted that the official 1910 plat of Benton conflicts with a 1945 State Department of Transportation (DOT) survey of the Town in that the plat indicates a 70–foot right-of-way for Commerce Street—a major Town thoroughfare running generally east and west—while the DOT survey reflects a 55–foot right-of-way for that street. He further testified that old fence lines shown on the 1945 DOT survey, if extended, would line up with the pavement of Maggie Street running back beyond the bank's property, indicating that a 55 foot right-of-way was more likely than not and that Maggie Street should run straight for at least two blocks from U.S. Highway 411 westward past the bank. The Town also presented the testimony of four long-time residents of Benton, all of whom testified that a Town-maintained alleyway running along the southern edge of the property purchased by the bank existed for years prior to the bank's purchase. One witness testified to the existence of the alley as early as "the late '40s, early '50s."

The bank presented the testimony of a U.S. Department of Agriculture (USDA) records custodian, who introduced a 1970 USDA aerial photograph which indicates that at that time no alley existed immediately south of what would later become the bank's property. The bank also presented the testimony of the bank's cashier who had worked at the branch since its opening in 1974. She testified that there was no street or alley running along the southern border of the property when the bank purchased it. She also denied that any entity other than the bank had ever maintained the section of Maggie Street on the bank's south side. The bank also presented the testimony of its own registered surveyor, who stated that he accomplished a survey to determine the bank's property line by using some "old iron pins around the Merchandise City property [which is further unidentified in the record]" as a starting point, as well as the 70 foot right-of-way for Commerce Street shown on the 1910 plat. He testified that the bank's property extended most of the way across Maggie Street, and that if the 55 foot right-of-way for Commerce Street is correct, "then every property in the Town of Benton is wrong." He stated that Maggie Street, as it currently exists, does not match the original 1910 plat for the Town. Finally, the bank presented two long-time Benton residents who testified that a ditch, rather than an alley, had previously existed along the south side of the property that the Bank purchased in 1974.

The Chancellor entered judgment for the plaintiffs. He opined in part as follows:

The real question is whether the bank is encroaching upon an area allocated to be a city street, and also whether the bank is attempting to usurp property not contained within their deed. It is therefore appropriate to look at the deed and the plat of 1910 to determine the extent of the Peoples Bank boundary. This Court is of the opinion that the original plat is controlling as reference is made to that plat, and it is further the Court's opinion that the Defendant bank is exceeding their domain.... The Court looks to the plat, the Department of Transportation's survey, the contiguous streets, and rules that the survey of Mr. Church should prevail. It is not the prerogative of this Court to offset the original plat which is supported by the historical documents submitted by the original petitioners.

The trial court then formally decreed that "the south line of the [bank's] property, which is also the north line of the right of way of Maggie Street is as reflected on the survey of Kenneth D. Church [the registered surveyor who testified for the Town] dated March 6, 1994, ..." He impliedly concluded that the bank could not build the proposed drive-through lanes on the property utilized for Maggie Street.

## II

We review this non-jury case under the standard set forth in the Rules of Appellate Procedure: review of findings of fact by the trial court in civil actions shall be de novo upon the record developed below, accompanied by a presumption of the correctness of the trial court's findings, unless the preponderance of the evidence is otherwise. Tenn. R.App.P. 13(d). No such presumption of correctness applies to the trial court's conclusions of law. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn.1993).

■ The key issue in this boundary line dispute is whether the trial court erred in finding that the 1910 plat of the Town of Benton together with Mr. Church's survey are controlling. We view this issue mindful of the fact that the object in all boundary cases is "to find, as nearly as may be, certain evidences of what particular land was meant

to be included for conveyance." *Pritchard v. Rebori*, 186 S.W. 121, 123 (Tenn.1916). What property did the bank acquire by its 1974 deed?

The bank's deed to the property is based upon and specifically refers to the 1910 plat of the Town. That plat reflects an orderly pattern of roads, with square and rectangular parcels of land formed by a gridwork of rights-of-way running generally north and south, and east and west. The plat shows the property purchased by the bank in 1974, as forming a square, bounded by rights-of-way on all four sides, with the street on the southern side, i.e., what is now Maggie Street, having a 30 foot right-of-way. The plat also reflects Commerce Street, three blocks to the north and parallel with what is now Maggie Street, as having a 70 foot right-of-way.

In making our analysis, we are also aware that surveys have been held to take precedence over conflicting maps and plats. *See Staub v. Hampton*, 101 S.W. 776 (Tenn.1907).

The Town's official 1910 plat does not indicate that it is drawn to scale. Therefore, we do not believe that it is conclusive evidence of the width and location of the right-of-way now known as Maggie Street. We believe that the trial court was justified in relying upon Mr. Church's survey, which in turn was based on the 1945 DOT survey and other physical evidence, in locating Maggie Street, and the southern boundary of the bank's property. That evidence is inferentially supported by the testimony of long-time residents of Benton.

We have reviewed the record de novo. We cannot say that the evidence preponderates against the Chancellor's finding as to the location of the southern boundary of the bank's property. This being the case, the presumption of correctness "carries the day," and it results that the Chancellor's judgment must be affirmed.

## III

■ The Town has raised an issue that merits our consideration. If the Supreme Court concludes that our primary holding is erroneous, our resolution of the issue raised

by the Town will also preclude the bank's proposed addition. The Town argues that the contested strip of land, even if it did initially belong to the bank, is open to the traveling public as a public right-of-way because of the doctrine of prescriptive easement or implied dedication.

The Town's reliance on the doctrine of prescriptive easement is misplaced. "Twenty years of adverse use is required to establish a prescriptive easement." *McCammon v. Meredith*, 830 S.W.2d 577, 580 (Tenn.App. 1991). There is no evidence in the record that anyone has adversely used the subject property for the required period of time. The doctrine of prescriptive easement simply does not apply to this case.

■■ An implied dedication of the subject property is another matter. Dedication is defined as "[a] deliberate appropriation of land by its owner for any general and public uses, reserving to himself no other rights than such are compatible with the full exercise and enjoyment of the public uses to which the property has been devoted." *Winn v. Tucker Corp.*, 848 S.W.2d 64, 68 (Tenn.App.1992); *see also Black's Law Dictionary* 412 (6th ed.1990); *Stoker v. Brown*, 583 S.W.2d 765, 766 (Tenn.1979). For an implied dedication to arise, there must have been conduct by the owner from "which a reasonable inference of intent may be drawn, or which is inconsistent with any other theory than that he intended a dedication." *Black's* at 413.

■■ It is clear under Tennessee law that private land can be impliedly dedicated for use as a public road. *Rogers v. Sain*, 679 S.W.2d 450, 452 (Tenn.App.1984); *McCord v. Hays*, 302 S.W.2d 331, 333 (Tenn.1957). Proof of the landowner's intent to dedicate must be unequivocal, but the intent can be gleaned from surrounding circumstances, including the owner's overt acts. *See Rogers* at 453; *Cole v. Dych*, 535 S.W.2d 315, 320 (Tenn.1976). Factors to be considered in making this determination include whether the landowner opens a road to public travel and acquiesces in the use of the road as a public road, plus whether or not the public has used the road for an extended period of time. *Rogers* at 453. Both the offer of

dedication and the public acceptance thereof may be expressed or implied. *State ex rel. Matthews v. Metro. Government*, 679 S.W.2d 946, 948 (Tenn.1984).

In *Rogers*, the defendants attempted to close a privately-constructed but publicly-maintained gravel road running between their property and the plaintiff's adjoining land. *Id.* at 451. The plaintiff landowners sought a judicial declaration that the road was a public road. The trial court found by clear and convincing evidence that the road in question had been "substantially improved and maintained by the County Highway Department for more than twenty (20) years [at] the express request of defendants or their predecessors in title ..." *Id.* at 452. The *Rogers* court noted that "[w]hile dedication is not dependent on duration of the use, extended use is a circumstance tending to show an intent to dedicate." *Id.* at 453; *see also Johnson City v. Wolfe*, 103 Tenn. 277, 52 S.W. 991 (1899); *Nicely v. Nicely*, 232 S.W.2d 421 (Tenn.App.1949) (finding dedication at the end of five years' public use, plus road grading with public funds). The court further stated that "an intent to dedicate is inferable when the roadway is repaired and maintained by the public," and concluded by endorsing the trial court's holding that the road had been impliedly dedicated as a public road. *Rogers* at 453.

■■ While we believe the evidence does not preponderate against the Chancellor's finding that the subject property does not belong to the bank, we make an alternative holding in the event further review of this case results in a reversal of our primary holding. Alternatively, we agree with the Town that even if the bank owns the subject property, it has impliedly dedicated it for use as a public right-of-way. We view *Rogers* as controlling on this matter. The bank under its theory of this case, like the defendant landowners or their predecessors in *Rogers*, constructed a road at its own expense, but opened that road for public use. Furthermore, there was testimony below from two Town officials that bank officers had supported use of HUD funds to repave the road in 1978. There was further testimony from

the Town's street commissioner that the Town had maintained the road for at least ten years. We further note that the section of road built by the bank connected two public roads (U.S. Highway 411 and the preexisting Maggie Street) to one another, clearly suggesting public use, and that the section originally constructed by the bank had been in use for approximately nineteen years at the time of trial. These circumstances lead us to conclude that even if the bank owns the road in question, it was dedicated by the bank as a public road. The citizens of Benton impliedly accepted that dedication by utilizing the road. Although the public acquires only an easement in dedicated property, while the underlying fee remains in the property owner, the bank cannot now obstruct the public's easement. *See City of Memphis v. Overton*, 216 Tenn. 293, 392 S.W.2d 98, 100 (1965). If our primary holding is incorrect, the bank is still precluded from using Maggie Street for an expansion of its bank facility under our alternative holding.

The judgment of the trial court is affirmed. This cause is remanded to the court below for the collection of costs assessed there. The costs of this appeal are taxed against the appellant and its surety.

GODDARD, P.J. (E.S.), and FRANKS, J., concur.