IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 6, 2000 Session

# CARL D. CLARK, et al. v. ROGER D. LEMLEY, ET UX.

**Appeal from the Chancery Court for Lincoln County**
**No. 11,113     Charles Lee, Sitting as Chancellor by Interchange**

---

**No. M1999-01271-COA-R3-CV - Filed November 9, 2000**

---

This case arises from a dispute between neighbors over the use of an old road which connected Appellant's landlocked farm to a public roadway. The road crossed Appellees' property. After Appellees erected a locked gate across the old road, Appellant sought injunctive relief to permit access to the old road. After a trial, the court found that the old road was never a public road and that no prescriptive easement existed. The court declined to provide the requested relief. Because the evidence does not preponderate against the trial court's findings, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed and Remanded to the Chancery Court for Lincoln County**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and WILLIAM B. CAIN, J., joined.

R. Whitney Stevens, Jr., Fayetteville, Tennessee, for the appellants, Carl D. Clark and Richard Whittle.

Barbara G. Medley, Lewisburg, Tennessee, for the appellees, Roger D. Lemley and Brenda Dianne Lemley.

## OPINION

This case arises from a dispute between neighbors over the use of an old road connecting Appellant Carl D. Clark's landlocked farm to a public roadway.[1] The road crosses property owned by Appellees Roger D. Lemley and Brenda Dianne Lemley. After the Lemleys erected a locked gate across the old road, Mr. Clark sued for injunctive relief to permit his access to the old road.

---

[1]The possible application of Tenn. Code Ann. § 54-14-101, *et seq.,* the statutory procedure for petitioning for a private road from landlocked parcels, was not raised in the court below.

Mr. Carl Clark purchased his 132 acre, landlocked farm from his uncle, Yale Clark, in 1986. During this litigation, Mr. Clark transferred his interest in the property to Richard Whittle, who was then added as a party to this action. The deed transferring the property from Mr. Clark to Mr. Whittle was recorded on April 20, 1999.

The Lemleys bought their adjoining tract in 1991. Their deed contains no mention of an easement.

The road at issue originates where Wise Road, a public highway, meets the Lemleys' property. It crosses the Lemleys' land, runs through to the Clark property, and terminates at a house there. As it runs across the Lemleys' land, the old road is unpaved and overgrown with brush. It crosses over at least one streambed. It is the only road connecting the Clark property to a public highway. However, the Clark farm may also be accessed by crossing land on another neighbor's property.

At the time he purchased the property, Mr. Clark was working in the oil fields of Africa and returned home only once a year. His schedule changed in 1990 and he visited more frequently. He used the old road to access his land and to move farm equipment. After his retirement in 1994, Mr. Clark spent more time on the farm.

In 1995, Mr. Clark discovered that a gate on the Lemleys' property which blocked the old road was locked. He asked Mr. Lemley for a key to the gate, and Mr. Lemley obliged. Several weeks later, Mr. Lemley changed the lock. When Mr. Clark asked about it, Mr. Lemley responded that "he wasn't allowed back there." Mr. Clark offered to buy a right-of-way, but Mr. Lemley refused.

Mr. Clark then commenced the underlying action, seeking an injunction to allow him access to the old road. The complaint alleged that the old road was simply an extension of Wise Hollow Road, a public roadway, and that erection of the gate violated Tenn. Code Ann. § 54-10-110, which prohibits the obstruction of public highways. Mr. Clark also claimed that he possessed an easement allowing him to use the old road and a right to use the road through adverse possession. As noted, after Mr. Whittle purchased the property, he joined in this action.

The case was tried to the court. The first witness was Sue Barnes, who had resided on the Clark tract from 1938 to 1948. She testified that vehicles, such as grocery delivery trucks, visitors' vehicles, and milk trucks, used the old road to access her family's farm. She stated that these vehicles used the road across what is now the Lemleys' property and she never sought permission for the delivery truck or the milk truck to use the road, but she did not know if her father had.

Mr. Clark and Mr. Whittle also called Mrs. Barnes' sister, Josie Tally, who testified that she too had lived on what is now the Clark property for 13 or 14 years beginning in 1937 and saw vehicles coming and going from her family's farm on the old road. She testified that there was always a wire running across the road, which would be unhooked and refastened for vehicles passing

through. She stated that her family did not own a car or truck at the time, but the old road was the only way motor vehicles could reach the farm.

David Roscoe Clark, son of Yale Clark, who sold Plaintiff Clark his property,[2] testified that his father bought the land in 1951. David Clark testified that he lived on the property from age 1 to 5, when his parents divorced, and off and on from age 14, when his mother died, to 1986.[3] David Clark testified that he, his father, and others used the old road to access the property and that he never had to have permission to use the road. He also recalled that the County had maintained the road through what is now the Lemleys' property and his father helped to maintain the portion of the road crossing the Clark property by filling in ruts and clearing bushes.

Carl Clark testified that prior owners of the Lemleys' land locked the gate and blocked the road, but Mr. Clark had always managed to get a key. Mr. Clark testified that the Lemleys had given him a key, but then changed the lock, and refused to give him another key. Mr. Clark claimed that this shut down his farming operation.

Mr. Whittle testified that he could reach his land by crossing an adjoining farm "with great difficulty." He stated, "if it's drier weather you can get in with a truck, if you're very careful," but the only way to get a hay baler to his property was over the old road. He claimed that he intended to make the tract his home. Mr. Whittle stated that the purpose of his lawsuit was to get access to his property through any roadway.

The Lemleys called Florence Hamlin, who had lived on the Lemleys' property from 1951 to 1984. She testified that her husband gave Mr. Clark's uncle permission to use the road. She also testified that she did not recall seeing any milk trucks or cars driven by David Clark on the old road.

The defense next called Tully Beavers, who rented what is now the Lemleys' property for over a year at some unspecified time before the Lemleys bought it. He testified that he kept cattle on the property and strengthened the gate with barbed wire and locked it after someone failed to latch it back and his cows got loose. He did not remember giving Mr. Clark a key and did not live on the land.

Mr. Lemley testified that he first met Mr. Clark when one of Mr. Clark's dogs came onto his property. He caught it and called Mr. Clark, who retrieved it. Two years later, Mr. Clark purportedly asked for a key to open the gate so a member of his family from Florida who owned the property could view it. Mr. Lemley testified that Mr. Clark never returned the key, and three weeks later, while hauling hay on the old road, Mr. Clark got stuck in Mr. Lemley's front yard and made a mess. When Mr. Lemley learned that Mr. Clark, rather than the lady from Florida, owned the

_____

[2]David Clark was Plaintiff Carl Clark's cousin.

[3]Mr. Clark also testified that he did not live with his father after his mother's death, but lived with an uncle, "Stink" Clark, who resided on an adjoining farm.

property, it angered him and he changed the lock shortly thereafter. He explained that Mr. Clark "had lied about the whole situation and he wasn't going back there . . . he wanted to know why I changed the lock and I told him what he had done to my yard and what he had done to my driveway and about him lying and I told him he wasn't coming through."

After hearing the evidence, the trial court denied the request for an injunction. The trial court determined that the portion of the old road which crossed the Lemley's property had never been a public road, which meant that there was no private easement. The trial court also found that no prescriptive easement arose because the prior use of the road was not adverse, but permissive. This appeal ensued.

## I. Standard of Review

As a preliminary matter, we turn to the applicable standard of review. Because this is an appeal from a decision made by the court following a bench trial, the standard set forth in Tenn. R. App. P. 13(d) governs our review. Thus, we must examine the record *de novo* and presume that the findings of fact are correct "unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). Furthermore, great weight must be given to the factual findings made by the trial court that rest on determinations of credibility. *See Randolph v. Randolph*, 937 S.W.2d 815, 819 (Tenn. 1996). The presumption of correctness requires us to accept the trial court's findings of fact unless the aggregate weight of the evidence demonstrates that a finding of fact other than the one found by the trial court is more probably true. *See Estate of Haynes v. Braden*, 835 S.W.2d 19, 20 (Tenn. Ct. App. 1992) (holding that an appellate court is bound to respect a trial court's findings if it cannot determine that the evidence preponderates otherwise). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *See The Realty Shop, Inc. v. RR Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn.Ct.App. 1999). Questions of law receive plenary review. *See Malone & Hyde Food Servs. v. Parson*, 642 S.W.2d 157, 159 (Tenn. Ct. App. 1982)

## II. Dedication by Implication

Mr. Clark and Mr. Whittle argue that the section of the old road crossing the Lemleys' property became a public roadway under the doctrine of dedication by implication, and blocking it was illegal.[4] They maintain that the trial court erred in finding that the old road had never been a public roadway, asserting that the court failed to properly consider David Clark's testimony that he used the road off and on from 1951 to 1968 and that the county maintained the road through the Lemleys' property. They assert that the fact that the road ended at the Clark property is immaterial

---

[4]Tenn. Code Ann. § 54-10-110 states in pertinent part:

(a) Any person who places, or causes to be placed, on any public highway, any brush, briers, or any other material or thing which may obstruct or damage such highway, or render it inconvenient or hurtful to the traveling public, or who may encroach upon the same in constructing any fence, wall, or like improvement, commits a Class C misdemeanor.

to whether it was a public road as it ran through the Lemley property and argue that the testimony that grocery vans and milk trucks used the road unimpeded for an extended period is proof of a dedication (as a public road) by implication.

To establish that an owner of property impliedly dedicated a roadway thereon to the public, "there must be proof of facts from which it positively and unequivocally appears that the owner intended to permanently part with his property and vest it in the public, and that there can be no other reasonable explanation of his conduct." *McKinney v. Duncan,* 121 Tenn. 265, 271, 118 S.W. 683, 684 (Tenn. 1909). Under Tennessee law:

> "[W]hen a road runs across private property, and is used by the public as a common road, without interruption for 50 years, the owner acquiescing in such use, the law will presume a dedication for such purpose." [*Woolard v. Clymer*], 35 S.W. at 1088. "Indeed, from long use, without objection of the owner, it may be inferred or presumed that such use and enjoyment had a legal origin." *Cole v. Dych*, 535 S.W.2d at 319. An implied dedication does not depend on use by the public for any definite period of time; "but it ought to be for such a length of time that the public accommodation and private rights might be materially affected by an interruption of the enjoyment." *Scott v. State*, 33 Tenn. 629 at 633 (1854).

*Sanders v. Mansfield*, No. 01A01-9705-CH-00222, 1998 WL 57532 at * 2 (Tenn. Ct. App. Feb. 13, 1998) (no Tenn. R. App. P. 11 application filed). A public road has generally been defined to be a way open to all people, without distinction, for passage and repassage at their pleasure. *See Cole v. Dych*, 535 S.W.2d 315, 318 (Tenn. 1976) (citing *Sumner County v. Interurban Transp. Co.*, 141 Tenn. 493, 213 S.W. 412 (1918)). Factors to be considered in determining that a dedication by implication has occurred include showings that the landowner opened the road to public travel and acquiesced in the use of the road as a public road, and that the public used the road for an extended period of time. *See Town of Benton v. Peoples Bank of Polk County,* 904 S.W.2d 598, 602 (Tenn. Ct. App. 1995).

Having reviewed the record, we cannot say that the evidence preponderates against the trial court's finding that the old road was never a public road. We find no evidence that the Lemleys or their predecessors intended to dedicate the land to a public use, the paramount question on the issue of dedication by implication. Although David Clark testified that he recalled that the county maintained the old road "on up into" the Lemley's property, the woman who lived on that property from 1951 to 1984 testified that "we had all the gates fastened from our house plumb back to that hollow." She also testified that she did not see vehicles use the old road without her husband's permission. The trial judge clearly accorded more weight to the neighbor's testimony than to David Clark's. "Where the trial judge has seen and heard witnesses, especially where issues of credibility and weight of oral testimony are involved, on review considerable deference must still be accorded to those circumstances." *Humphrey v. David Witherspoon, Inc.*, 734 S.W.2d 315, 315-16 (Tenn. 1987). Further, the use of the road by delivery and milk trucks to access one family's house was not

sufficient to show that the owner intended to dedicate the road to a public use; such vehicles use private driveways as well as public roads.

## III. Prescriptive Easement

Mr. Clark and Mr. Whittle argue that even if the old road was never a public thoroughfare, a prescriptive easement was created by the open, adverse, and continuous use of the road from 1937 until at least 1968 by the Clark family and its predecessor in interest, which was sufficient to create a prescriptive easement. They assert that such use, for twenty years, creates a prescriptive easement.

A prescriptive easement is an implied easement that is premised on the use of the property rather than language in a deed. A prescriptive easement arises when a person, acting under an adverse claim of right, makes continuous, uninterrupted, open, visible and exclusive use of another's property for at least twenty years with the owner's knowledge and acquiescence. *See Bradley v. McLeod*, 984 S.W.2d 929, 935 (Tenn. Ct. App.1998); *Pevear v. Hunt*, 924 S.W.2d 114, 115-116 (Tenn. Ct. App.1996). The party asserting a claim of prescriptive easement bears the burden of proving these elements. *See McCammon v. Meredith,* 830 S.W.2d 577, 580 (Tenn.Ct. App.1991); *Fite v. Gassaway,* 27 Tenn.App. 692, 701, 184 S.W.2d 564, 567 (1944). Continuity of use for the requisite twenty-year period may be established by tacking from the use of predecessors in title. *See Star Enterprise v. Warner*, No. 01A01-9502-CH-00036, 1995 WL 381652 at * 6 (Tenn. Ct. App. June 28, 1995) (no Tenn. R. App. P. 11 application filed).

The undisputed testimony of Mrs. Hamlin demonstrates that from 1951 until 1984, the use of the old road was permissive and not adverse as is required to establish a prescriptive easement. Mrs. Hamlin denied that "traffic came in and out by her house to go back into" the Clark property while she resided on the Lemley property. She specifically testified that her husband gave permission to use the road to Mr. Clark's predecessor in title. Mr. Clark and Mr. Whittle bore the burden of proving the existence of a prescriptive easement by clear and positive proof. *See McCammon v. Meredith*, 830 S.W.2d at 580. In light of Mrs. Hamlin's testimony and the standard of review, which favors the trial court's factual findings, we cannot say that the evidence preponderates against the trial court's implicit determination that they did not satisfy that burden.

## IV. Conclusion

Accordingly, the judgment of the trial court is affirmed. This case is remanded for any further proceedings which may be necessary. Costs of this appeal are taxed to Mr. Clark and Mr. Whittle, for which execution may issue if necessary.

_____
PATRICIA J. COTTRELL, JUDGE