# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
March 4, 2013 Session

## DONALD HUGHES, ET AL. v. CLIFFORD R. BARBEE, ET AL.

**Appeal from the Chancery Court for Bledsoe County**
**No. 3137     Jeffrey F. Stewart, Chancellor**

**No. E2012-01330-COA-R3-CV - Filed April 9, 2013**

Donald Hughes and Donna Hughes ("Plaintiffs") sued Clifford R. Barbee and Anna Melissa Barbee ("Defendants") seeking, among other things, an order restraining Defendants from obstructing an alleged public roadway. After a trial the Trial Court entered its order on May 29, 2012 finding and holding, *inter alia*, that the road at issue "was a public road which had been in existence (and used by the public) for a number of years," that Defendants had failed to prove that the road had been abandoned, and that the road was to "be opened for use by the public." Defendants appeal to this Court. We find that the evidence does not preponderate against the Trial Court's findings, and we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**
**Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., P.J., and THOMAS R. FRIERSON, II, J., joined.

Edward L. Boring, Pikeville, Tennessee, for the appellants, Clifford R. Barbee and Anna Melissa Barbee.

M. Keith Davis, Dunlap, Tennessee, for the appellees, Donald Hughes and Donna Hughes.

**OPINION**

**<u>Background</u>**

Plaintiffs own a parcel of real property consisting of approximately 300 acres in Bledsoe County. Gary and Marseata Lockhart own a parcel of real property consisting of approximately 137 acres that adjoins Plaintiffs' property. Defendants own a parcel of real property consisting of approximately 13 acres that adjoins the Lockharts' property on another side. The road at issue ("the Road") allegedly runs through all three of these properties. A portion of the Road is a county road named Snowy Lane. The portion of the Road at issue in this case is not part of the county road and is unnamed. Exhibit "A"[1] to this Opinion shows Plaintiffs' parcel identified as "1," the Lockharts' parcel identified as "2.03," and Defendants' parcel identified as "2.06." The portion of the Road at issue in this suit is shown on Exhibit A as the line of x's crossing the Lockharts' parcel and Defendants' parcel.

In 2005 or 2006 a group of property owners including the Lockharts and Defendants contributed money to have a contractor upgrade the portion of the Road now known as Snowy Lane. This portion of the Road then became a county road. Snowy Lane runs from Hendon Road up to the Lockharts' property line. In 2008 Defendants blocked off the portion of the Road at issue in this suit on both sides of their property. Plaintiffs filed suit, and the case was tried without a jury in early 2012.

Candace Stults, the assessor of property for Bledsoe County, testified at trial. Ms. Stults identified a copy of the first tax map for Bledsoe County dating from the early 1970s, which was introduced as an exhibit at trial. This map has highlighted a dotted line that shows a road, trail, or right-of-way going through Defendants' property. Ms. Stults also identified a copy of the current tax map, which was introduced as Exhibit 7 at trial. The current tax map shows a highlighted dotted line that represents a road listed on the map as Snowy Lane. Ms. Stults testified that the current map was made from a flyover or aerial photograph taken in 2006. The current tax map also shows a road going around Defendants' 13-acre parcel, rather than through it. Ms. Stults testified that these maps taken together show that the Road changed course. Ms. Stults agreed that the importance of marking a road or a trail on the tax map is because that road or trail is used by the public.

Gary Lockhart testified that he and his wife live at 1104 Snowy Lane. The Road runs across the Lockharts' property. Mr. Lockhart testified that the highlighted dotted line on Exhibit 7 does not accurately reflect the position of the Road in 2006. He testified that the line of x's on Exhibit 7 shows the position of the Road at that time.

---

[1]This exhibit was introduced at trial and identified as 'Exhibit 7.'

The Lockharts purchased their property from Fred and Ruth Cooke. Mr. Lockhart explained that Defendants purchased their property from Mr. Thurman, who had purchased it from Ruth Cooke after Fred Cooke's death. Mr. Lockhart testified that he had had a conversation with Fred Cooke about the Road. Mr. Lockhart stated: "all my dealings were with Fred. He said that that road was a right-of-way to two other people's property, went all the way through Fred's property, by Burke Combs' property, up to, at the time, the Crookses' property." Mr. Lockhart explained that Plaintiffs now own the Crookses' property. Mr. Lockhart testified that the dotted line on the map on Exhibit 7 "looks like it should be the road that originally went through Fred Cooke's land up to [Plaintiffs'] land up on the top."

Mr. Lockhart was asked about the condition of the Road when he and his wife purchased their property, and he stated: "Except for one section that was closer to Jones Gap Road, it was virtually passable in a car. My wife drove a Toyota Camry in when we were building the house." Mr. Lockhart testified that he and his wife purchased their property in 1989 and stated that the Road has always been passable. Mr. Lockhart was asked how wide the Road was when he purchased his property, and he stated: "Twelve, fifteen feet. It kind of varied, but it was - - I'd say twelve, fifteen feet."

The Lockharts built their house in 1990 and put in a driveway. Mr. Lockhart explained: "There was a trail there, a small trail there, and we brought a dozer in and gravel and we built [our driveway]." Since the Lockharts built their house, Mr. Lockhart has seen other people use the Road. He stated: "People rode it regularly. I don't know a number of times you see people on it. I mean, people rode four-wheelers through it, and trucks." He further stated: "I don't know the number, but I have seen - - my kids have ridden it on a four-wheeler and I've ridden it." When asked how many times a year the Road had been used, Mr. Lockhart stated: "I'd say dozens and dozens and dozens. People ride through at night, coon hunters go through there, deer hunters go through there." Mr. Lockhart also testified that he has seen Defendant Clifford Barbee using the Road on the part that crosses the Lockharts' property. When asked if he gave Defendant Clifford Barbee permission to use the Road, Mr. Lockhart stated: "No, but I didn't - - it didn't bother me."

Mr. Lockhart testified that prior to Defendants obstructing the Road, the condition of the Road: "was reasonable. I'd driven - - I'd driven tractors up through there. I'd driven - - I don't know that I ever took the truck up through there, but I'd driven the tractor up there. And we rode four-wheelers through there." Mr. Lockhart testified that after the obstruction was placed an alternative route of the Road was made between his property line and Plaintiffs' property line. He explained that the Road still is being used but people take an alternate route when they reach the part Defendants blocked.

-3-

Mr. Lockhart was asked if the Road connected to any public or county-maintained roads, and he stated:

> Yes, sir. It goes all the way from Jones Gap and then goes all the way through, at the time would have been through my property and through - - actually, through all of Fred's property before me, through the property that [Plaintiff Donald Hughes] owns now, and then it goes all the way to Retro Hughes Road. Or Blaine Smith, whichever it's called.

Mr. Lockhart explained that Snowy Lane is a county road that goes all the way up to his property line. Snowy Lane was tarred and chipped, and several landowners including the Lockharts contributed toward cost of this work, each paying around $3,500 or $4,000.

Marseata Lockhart, Gary Lockhart's wife, testified that she and her husband have used the Road since they purchased their property. Before they built their driveway, Mr. and Mrs. Lockhart accessed their property using the Road.

Mrs. Lockhart testified that she has seen other people use the Road. When asked how many, she stated: "More than a few. A lot." People still are using the unobstructed portion of the Road. Mrs. Lockhart testified that the Road runs through her property and that the people who use the Road have not asked her permission to do so.

Mrs Lockhart testified that since she and her husband built their driveway in 1989, they have used the driveway and a portion of the Road to access their property. The portion of the Road that the Lockharts used at the time of trial is the county road Snowy Lane. Mrs. Lockhart explained that the Road is Snowy Lane up to her property line, and that it is less than one mile on Snowy Lane from Hendon Road up to the Lockharts' property line. The Lockharts have used both the Road and the alternate route since they built their driveway in 1989.

Mrs. Lockhart testified that before Defendants obstructed the Road she and her husband used the Road regularly, "[w]henever we wanted to go to that part." She testified that she would walk the Road two or three times a week, and that she would see four-wheelers go through "in the fall, regularly.… I would say every weekend." Mrs. Lockhart did not see people use the Road during the week because she was at work. When asked, Mrs. Lockhart agreed that there is an area on the Road where water collects during approximately nine months out of the year.

Mrs. Lockhart testified that four or five years prior to trial several property

owners including Defendants, Steve and Laura Sexton, Garland Holcomb, Mr. Lagoo, and another owner whose name she could not recall, got together and improved a portion of the Road to make it a county road. Mrs. Lockhart testified that these people are all adjacent property owners. Mrs. Lockhart stated that Plaintiffs did not contribute to improving the portion of the Road and were not asked to do so because they are not "an adjacent property owner."

Herbert W. Welch testified that he knows the Plaintiffs but does not know the Defendants. Mr. Welch's father owned the property owned by Plaintiffs before Mr. Welch was born. Mr. Welch testified that he is familiar with the Road and has traveled it. Mr. Welch was 81 years old at the time of trial, and he stated that he had ridden on the Road "[j]ust about all" his life. He explained that he would use the Road when he hunted, "[m]ostly on weekends." Mr. Welch also saw other people using the Road. Mr. Welch described the condition of the Road during the time period when he used it as "[b]ad." When Mr. Welch used the Road there was no tar or chip on it.

Mr. Welch admitted when asked that he "can't remember much no more anyway," and that his memory is "[n]ot too good, no." He also admitted that it had been three, four, or maybe five years since he went all the way through the area on his four-wheeler. Mr. Welch stated that he used to use the Road "regularly," before he had a stroke. Mr. Welch could not remember when he had the stroke.

Wilma Rylander, who was 77 years old at the time of trial, testified that her father Prady Bowman formerly owned the property now owned by Plaintiffs. Ms. Rylander almost 13 years old when her family moved from that property. She testified that when they lived there: "My dad had a sawmill and he hauled lumber out that road, to me, about every day. Sometimes I know it was twice a day." The last time Ms. Rylander was on the property was approximately 30 years ago.

Terry Hughes, Plaintiff Donald Hughes' brother, testified at trial. Mr. Hughes, who was 57 years old at the time of trial, testified that he grew up on property approximately three miles away from the Road and has lived in the community his whole life. Mr. Hughes stated that he: "traveled that old road hunting and, you know, just running dirt bikes, four-wheelers for many years." He further stated: "everybody used that road …." Mr. Hughes has seen four-wheelers and hunters using the Road. Mr. Hughes testified that if he could not use the Road to get to his brother's place, he would have to use an alternate route that would be approximately five or six miles longer.

When asked about the condition of the Road, Mr. Hughes stated:

Well, it was just an old road, but it was - - you know, you could travel it, you know…. I mean, if you go out there today, you will see how deep. It's an old, old road, you know. This ain't no road that's been there that somebody has just made. It's been there for a long time.

Glenn Sparks, who was 63 years old at the time of trial, testified that he had lived in the community for almost 20 years and had traveled the Road. Mr. Sparks testified that he has used the Road approximately fifteen or twenty times over the 20 years during which he has lived in the community. Mr. Sparks testified that prior to Defendants obstructing the Road, he never was stopped from using the Road and never had to ask permission to do so. Mr. Sparks testified that he has seen other people use the Road including "deer hunters," "people out riding cab trucks," and "four-wheelers." When asked if it was a rough road, Mr. Sparks stated: "Well, it was just an old dirt road…. Well, it was passable. I mean, I didn't have any trouble getting through there."

Mr. Sparks testified about Defendants obstructing the Road and stated: "trees were cut across the road and there were holes dug in the middle of the road." At Plaintiffs' request Mr. Sparks used a bulldozer to push the trees out of the way and fill up the holes.

Plaintiff Donald Hughes[2] has lived in the community since 1985. Plaintiff Hughes testified that he has used the Road and stated: "In the summertime I use it more than in the winter. You know, I used it, I don't know, 15, 20 times a year, and that's just a guess." Plaintiff Hughes has used tractors, four-wheelers, and a truck on the Road. He stated: "It's an old road. There is some mudholes, but you can pass through them." Plaintiff Hughes never had to ask permission to use the Road. He testified that no one interfered with his ability to use the Road until Defendants blocked the Road.

Plaintiff Hughes testified that he has seen other people use the Road. He explained that he grew up three or four miles from the location at issue and that he had used the Road since he was a child. Plaintiff Hughes stated that he and his brother used the Road for hunting and four-wheeling. He further stated that his whole family has used the Road including his father, brother, and sons.

Prior to Defendants obstructing the Road, Plaintiff Hughes never noticed any significant mudhole in the Road. When asked about the condition of the Road, Plaintiff Hughes stated:

---

[2]In order to avoid confusion due to the fact that Terry Hughes and Donald Hughes both testified at trial, when speaking of Plaintiff Donald Hughes, as opposed to both Plaintiffs collectively, we refer in this Opinion to Plaintiff Donald Hughes as 'Plaintiff Hughes' rather than Mr. Hughes.

It was just an old road, about like it is now, you know. You could drive, you know, whatever you really wanted to, besides maybe a little dinky car might - - might have some trouble getting in and out of there, but you could get a pickup truck or any kind of four-wheel-drive or a tractor or a four-wheeler.

Plaintiff Hughes was not asked to contribute to improving Snowy Lane and making it a county road, and he did not do so.

Defendant Clifford R. Barbee has lived at 645 Snowy Lane for approximately eleven years. Mr. Barbee testified that since he and his wife purchased their property in 1999 he never has seen anyone on or crossing his property. He stated:

I did not think there was any road across my property, but I was - - by going out there, walking through the woods, I've seen plenty of logging roads and they all connected to each other and that's what I thought that, if there was anything, any trails or anything, I assumed it was all logging roads.

Mr. Barbee testified that when he purchased his property he could see a trail in the location at issue and he walked it from his property through Gary Lockhart's property to where the Lockhart property joins Bowater.

Mr. Barbee testified that in May of 2008 he noticed that someone had run a dozer through his property and so he called the police, filled out a report, and blocked the way. Mr. Barbee testified that he did not cut any trees prior to Plaintiffs bulldozing across the property and stated: "It was too growed up to have to cut anything across." Mr. Barbee testified there was no roadway before Plaintiffs dozed.

Mr. Barbee explained how Snowy Lane became a county road stating:

In late of 2005, 2006 - - or 2005 we talked with all the landowners about making this - - doing the work, contracting it out to have it brought up to standards to a county road, and we hired a contractor to come in and bring it up to county standards so we could turn it over to a county road. By 2007, we had it turned over to a county road.

Mr. Barbee contributed $3,500 to making the county road. He testified that Plaintiffs did not contribute any money.

Registered land surveyor Donald Gene Reid testified at trial. Mr. Reid surveyed Defendants' property for the prior owners in 1999. Mr. Reid noted an easement for

ingress and egress for the installation of utilities across the existing gravel drive from the Lockharts' house to the Dale McCartney property. He also noted an easement that runs for approximately 3,200 feet from the Greg Johnson property across the Dale McCartney property to Hendon Road. Mr. Reid found no other recorded easements across Defendants' property when he prepared his survey. He admitted that he had no way of knowing about any unrecorded easements.

After trial the Trial Court entered its judgment on May 29, 2012 finding and holding, *inter alia*, that "the subject road which ran through a portion of the real estate owned by [Defendants] was a public road which had been in existence (and used by the public) for a number of years," that Defendants had failed to establish that the Road had been abandoned, and that the Road "shall be opened for use by the public." In its Memorandum Opinion incorporated into the May 29, 2012 order by reference the Trial Court specifically found Mr. and Mrs. Lockhart to be "disinterested parties" and "credible witnesses." Defendants appeal to this Court.

## Discussion

Although not stated exactly as such, Defendants raise two issues on appeal: 1) whether the Trial Court erred in finding and holding that the Road was a public road; and, 2) whether the Trial Court erred in holding that Defendants had failed to prove that the public had abandoned the Road.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

We first consider whether the Trial Court erred in finding and holding that the Road was a public road. As this Court explained in *Rainwater v. Sumner County*:

> "To establish a dedicated public right-of-way, there must be a showing
> of an offer of dedication and a public acceptance of the offer. Both the offer
> of dedication and the public acceptance may be express or implied." *West*
> *Meade Homeowners Ass'n, Inc. v. WPMC, Inc.*, 788 S.W.2d 365, 366 (Tenn.
> Ct. App. 1989) (citations omitted).… "When an implied dedication is claimed,
> the focus of the inquiry is whether the landowner intended to dedicate the land
> to a public use." *Rogers v. Sain*, 679 S.W.2d 450, 453 (Tenn. Ct. App. 1984)

(citations omitted). "The proof on the issue of intent to dedicate must be unequivocal, but intent may be inferred from surrounding facts and circumstances, including the overt acts of the owner." *Id.* Factors indicating an intent to dedicate are: "the landowner opens a road to public travel; acquiescence in the use of the road as a public road; and the fact the public has used the road for an extended period of time[.]" *Id.* "While dedication is not dependent on duration of the use, extended use is a circumstance tending to show an intent to dedicate." *Id.* "Finally, an intent to dedicate is inferrable when the roadway is repaired and maintained by the public." *Id.*

*Rainwater v. Sumner County*, 342 S.W.3d 500, 503-04 (Tenn. Ct. App. 2010). "Public acceptance of an offer of dedication may consist of either a formal act on the part of public authorities or common use by the general public." *West Meade Homeowners Ass'n, Inc. v. WPMC, Inc.*, 788 S.W.2d 365, 366 (Tenn. Ct. App. 1989) (quoting *State ex rel. Matthews v. Metropolitan Gov't of Nashville and Davidson County*, 679 S.W.2d 946, 949 (Tenn. 1984)).

To begin, we note that the Trial Court specifically found Mr. and Mrs. Lockhart to be "disinterested parties" and "credible witnesses." As our Supreme Court has instructed:

> When credibility and weight to be given testimony are involved, considerable deference must be afforded to the trial court when the trial judge had the opportunity to observe the witnesses' demeanor and to hear in-court testimony. *Estate of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997) (quoting *Randolph v. Randolph*, 937 S.W.2d 815, 819 (Tenn. 1996)). Because trial courts are able to observe the witnesses, assess their demeanor, and evaluate other indicators of credibility, an assessment of credibility will not be overturned on appeal absent clear and convincing evidence to the contrary. *Wells v. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999).

*Hughes v. Metro. Gov't of Nashville and Davidson County*, 340 S.W.3d 352, 360 (Tenn. 2011).

The evidence in the record on appeal shows an implied dedication and acceptance of the Road as a public right-of-way. Specifically, Ms. Ryder and Mr. Welch both testified that their respective fathers formerly owned Plaintiffs' property and that the Ryder and Welch families used the Road for activities such as hauling lumber, and hunting, among other things. In addition, Mr. Sparks, who testified that he has lived in the community for approximately 20 years, had used the Road and had seen other people using the Road.

Furthermore, Terry Hughes, Plaintiff Hughes, and both Mr. and Mrs. Lockhart testified that they each had used the Road and had seen other people using the Road.

The evidence in the record on appeal also shows that until Defendants obstructed the Road in 2008, members of the public had used the Road without the necessity of seeking permission to do so. Furthermore, the first tax map for Bledsoe County depicts the Road and Ms. Stults, the assessor of property for Bledsoe County, testified that the importance of marking a road or a trail on the tax map is because that road or trail is used by the public.

Even Defendant Clifford Barbee admitted during his testimony that he could see a trail in the location at issue when he purchased his property. He further admitted he walked this trail from his property through Gary Lockhart's property to where the Lockhart property joins Bowater.

In addition, the Trial Court specifically found Mr. and Mrs. Lockhart to be "disinterested parties" and "credible witnesses." The Trial Court had the opportunity to observe the witnesses, assess their demeanor, and evaluate their credibility, and we give great deference to a trial court's credibility determinations. Furthermore, the Trial Court noted in its Memorandum Opinion incorporated into its May 29, 2012 order that its decision "established this as a public road as it traverses the Lockhart property and the property of the Hugheses, …" in addition to the property of Defendants. The evidence in the record on appeal does not preponderate against the Trial Court's finding that "the subject road which ran through a portion of the real estate owned by [Defendants] was a public road which had been in existence (and used by the public) for a number of years."

We next consider whether the Trial Court erred in holding that Defendants had failed to prove that the public had abandoned the Road. As this Court explained in *Second Chance Farms, Inc. v. Perry County, Tennessee*:

> It is clear that there may be an abandonment of a public road, but the burden is on the parties asserting the abandonment to establish the intention to abandon, and an abandonment may be shown by evidence in pais as well as by public record. *See Hargis v. Collier*, 578 S.W.2d 953 (Tenn.App. 1978). This Court said in *Farr v. Pentecost*, 1994 Tenn. App. LEXIS 12, 1994 WL 12617 (Tenn.App.):
>
> > Tennessee courts have held that evidence of mere non-use alone does not establish abandonment, *Jacoway v. Palmer*, 753 S.W.2d 675, 677-78 (Tenn.App. 1987), nor will a

-10-

> city or county's failure to maintain a public road when it is being used by the public. *Cartwright v. Bell*, 57 Tenn. App. 352, 418 S.W.2d 463, 468-70 (Tenn.App. 1967). There must be a positive showing of an intent to abandon (*Jacoway*).
>
> *Shelco Corp. v. Barker*, 1996 Tenn. App. LEXIS 436, No. 03 A01-9509-CH-00317, 1996 WL 438877, at *1, (Tenn. Ct. App. July 30, 1996). Further, the abandonment of a public road must be established by clear and unequivocal evidence of decisive and conclusive acts. *Jacoway v. Palmer*, 753 S.W.2d 675, 679 (Tenn.Ct.App. 1987); *See also Ty Farming Co., Inc., v. Belew*, 1996 Tenn. App. LEXIS 720, No. 02 A01-9510-CV-00232, 1996 WL 649173 at *3 (Tenn.Ct.App. Nov. 8, 1996); *See also Cockroft v. Claunch*, 1992 Tenn. App. LEXIS 335, No. 02 A01-9108-CH-00164, 1992 WL 69621, at *4 (Tenn.Ct.App. April 8, 1992).

*Second Chance Farms, Inc. v. Perry County, Tennessee*, No. M2000-00513-COA-R3-CV, 2001 Tenn. App. LEXIS 145, at **13-15 (Tenn. Ct. App. March 7, 2001), *no appl. perm. appeal filed*.

Defendants argue in their brief on appeal that when they purchased their property in 1999 "they did not see any roadway present ...." This statement, however, is directly contradicted by Defendant Clifford Barbee's testimony that when he purchased his property he could see a trail in the location at issue and that he walked it from his property through Gary Lockhart's property to where the Lockhart property joins Bowater. Furthermore, Defendants assert in their brief on appeal that Defendant Clifford Barbee testified that he never saw anyone use the Road and that Defendants did not know until 2006 that anyone claimed an interest in the Road. As discussed above, however, the Road had been a public right-of-way for many years by that time. As such, Defendants had the burden of proving decisive and conclusive acts showing an intent to abandon. *See id*. at *15. The fact that they may have been unaware of the fact that the Road was a public right-of-way is insufficient to show abandonment of the Road by the public.

Defendants also argue that the Lockharts' use of the alternate route shows a dedication of a new roadway and an unequivocal intent to abandon the Road. We disagree. The evidence in the record on appeal shows that the Lockharts continued to use both the Road and the alternate route until Defendants wrongfully obstructed the Road. Defendants' actions in obstructing the Road were "ineffective to foreclose the rights of the public." *See id*. at *13 (stating: "the actions hereinafter discussed of Second Chance Farms, Inc. and its predecessors in title to block public use of the portion of Daniel's Landing Road in issue in this case are ineffective to foreclose the rights of the public.").

Further, Defendants argue that the fact that Plaintiff Hughes did not contribute to the improvement of the portion of the Road that became Snowy Lane somehow supports their argument that the Road was abandoned. Again, we disagree. The evidence in the record on appeal shows that Plaintiff Hughes never was asked to contribute to the improvement of Snowy Lane. Furthermore, the reasoning behind the decision to ask certain landowners to contribute to the improvement of Snowy Lane and not others has no connection whatsoever to the question of whether abandonment has been shown by "clear and unequivocal evidence of decisive and conclusive acts." *Id*. at *15.

After a careful and thorough review of the record on appeal, we find that the evidence does not preponderate against the Trial Court's findings relevant to this issue. We, therefore, agree with the Trial Court that Defendants failed to carry their burden to prove that the Road had been abandoned. We affirm the Trial Court's May 29, 2012 order.

### Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the appellants, Clifford R. Barbee and Anna Melissa Barbee, and their surety.

_____
D. MICHAEL SWINEY, JUDGE



**EXHIBIT A**